# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | (CHAPTER 11) |
| | § | |
| THINK3 INC. | § | CASE NUMBER 11-11252 |
| | § | |
| DEBTOR. | § | |

## AFFIDAVIT AND STATEMENT OF ANDREW PRICE

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| COUNTY OF TRAVIS | § | |

BEFORE ME, the undersigned authority, personally appeared Andrew Price, who, upon being duly sworn, deposed and stated as follows:

My name is Andrew Price. I am over the age of eighteen and am fully competent to testify. As the sole member of the Board of Directors of think3 Inc. (the "Debtor"), debtor and debtor-in-possession in this chapter 11 case, I have personal knowledge of the facts set forth herein.

### I.     Factual Background

1.     On May 18, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (as amended, the "Bankruptcy Code"). The Debtor is a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**A.     Background and Corporate Structure of the Debtor**

2.     The Debtor was incorporated under the laws of the state of Delaware on June 21, 2000. On September 27, 2010, the Debtor was acquired by ESW Capital LLC of Austin, Texas (the "Parent") in a stock-purchase transaction. All of the issued and outstanding common stock of the Debtor is owned by the Parent.

3.      Throughout its history, the Debtor, together with its subsidiaries, was a global leader in the computer-aided design ("CAD") and product lifestyle management ("PLM") software market.  The Debtor assisted manufacturing companies with styling, engineering, and tooling solutions and customer support services designed to help companies optimize the entire product development process, and to help industrial designers to create better, more innovative products.

4.      The Debtor's principal place of business is Austin, Texas.  The Debtor also conducts business in Italy through a branch office (the "Italian Branch").  The Italian Branch is a division of the Debtor and is not a separate legal entity.  The Debtor has a worldwide presence through six wholly-owned subsidiaries:  think3 GmbH (based in Germany) (the "German Subsidiary"), think3 SARL (based in France) (the "French Subsidiary"), think3 K.K. (based in Japan) (the "Japanese Subsidiary"), think3 Designs Private Limited (based in India) (the "Indian Subsidiary"), think3 China WOFE (based in China) (the "Chinese Subsidiary"), and think3 SRL (based in Italy) (the "Italian Subsidiary").  The Italian Subsidiary was a distributorship that performed sales and marketing functions for the Debtor.  An insolvency proceeding has been commenced against the Italian Subsidiary in Italy, as described in more detail below.  The Chinese Subsidiary is in the process of dissolving.  The Indian Subsidiary has ceased operations.  The French and German Subsidiaries have sought insolvency protection in France and Germany, respectively.  The Japanese Subsidiary of the Debtor is operating at this time.

**B.     The Debtor's Assets**

5.      The Debtor's principal assets consist of certain intellectual property (the "China IP"). The Debtor believes the China IP has significant value but will require further development, support, and enhancement before it will be fully marketable.

C.  **The Debtor's Liabilities**

6. The Debtor's principal liabilities consist of (i) tax debt to the Italian government in the amount of approximately $23 million, (ii) intercompany debt to the Italian Subsidiary and other subsidiaries; (iii) debt to Bologna Group, SpA; (iv) trade debt to various vendors and service providers; (v) potential liability to Versata FZ LLC ("Versata") in a lawsuit (described in detail below); (vi) liability to various customers who have previously purchased perpetual licenses of the Debtor's software; and (vii) liability to current and former employees.

D.  **Events Leading up to Chapter 11 Filing**

7. The Debtor has been in severe financial distress for some time. The worldwide economic downturn caused a decline in the industries of the Debtor's target customers, and the Debtor has been operating at a loss for several years. In late 2010, the Debtor embarked on an out-of-court restructuring plan aimed at generating enough cash to stabilize its operations, begin paying off liabilities, and create funding for the further development of the China IP. The plan hinged on the sale of the Debtor's intellectual property other than the China IP (the "Global IP").

8. On October 7, 2010, the Debtor entered into that certain Technology License Agreement (the "License Agreement") with Versata.[1] Under the License Agreement, the Debtor granted Versata the exclusive right to use the Global IP in the design, development, manufacture, marketing, distribution, and support of products. In exchange, Versata paid the Debtor $3,000,000. The Debtor engaged an independent third party, accountant Doctor Antonio Bragaglia of Studio Bragaglia, to advise the Debtor regarding the sale of the Global IP. Dr. Bragaglia determined that the criteria for valuation of the Global IP reflected in the License Agreement were appropriate from a technical and professional point of view, and in line with

---

[1] Versata is registered and domiciled in Dubai, and is a subsidiary of G-Dev Enterprises LLC, a Delaware entity. G-Dev Enterprises LLC's sole member is Joe Liemandt, who is also the sole member of the Parent.

general accepted financial practice in Italy and worldwide. The transaction with Versata provided a much-needed infusion of cash into the Debtor that allowed the Debtor to pay some of its creditors. The License Agreement is governed by Texas choice of law.

9. Also on October 7, 2010, Versata and the Italian Subsidiary entered into that certain Sales Representative Agreement (the "Sales Representative Agreement"). Pursuant to the Sales Representative Agreement, Versata appointed the Italian Subsidiary as its non-exclusive sales representative in Italy to market the products that Versata would create using the Global IP. In consideration for the services it provides under the Sales Representative Agreement, the Italian Subsidiary is entitled to a commission of fifty percent (50%) of order amounts from new customers.

10. As the next stage in its restructuring effort, the Debtor took steps to reduce costs and operate more efficiently and to raise additional working capital. This process was disrupted when, on March 14, 2011, several creditors commenced an insolvency proceeding against the Debtor and its Italian Subsidiary in the Court of Bologna, Italy (the "Italian Court"). The Italian insolvency proceeding is case number 69/2011. Despite the fact that the Debtor conducted its operations in Italy solely through the Italian Branch, the Italian Court placed the Debtor into bankruptcy. The Italian Court appointed Doctor Andrea Ferri as trustee (the "Italian Trustee") for the Debtor.

11. The Italian Trustee has seized control of the Debtor's and the Italian Subsidiary's assets and property. Among other things, the Italian Trustee has taken control of the Debtor's bank accounts in both the United States and Italy. He also has custody and control of the Debtor's books and records, and he will not provide the Debtor access to the information therein.

Upon information and belief, the Italian Trustee has also instructed the employees of the Debtor and the Italian Subsidiary not to communicate with the Debtor.

12. Following his appointment, the Italian Trustee sought authority to terminate the License Agreement pursuant to section 72 of the Italian Bankruptcy Law (Royal Decree no. 267 of 16 March 1942). On May 2, 2011, the Italian Court authorized the termination. Upon information and belief, the Italian Trustee asserts that as a consequence of the termination of the License Agreement, Versata no longer has the right to use the Global IP.

13. On May 10, 2011, Versata filed an appeal of the Italian Trustee's termination of the License Agreement. Versata asserted that under the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.*, the transfer of the Global IP to Versata under the License Agreement was essentially a transfer of ownership that cannot be terminated. Moreover, even if the transaction under the License Agreement is deemed to create a license, Versata asserted that it is entitled to retain its rights to use the Global IP regardless of the Italian Trustee's purported termination, as provided in section 365(n) of the Bankruptcy Code.

14. The Italian Trustee's actions have created considerable customer confusion and interfered with the Debtor's business. Upon information and belief, the Italian Trustee has directly contacted Versata's customers and directed them to make payments to the Italian Trustee rather than Versata. The Italian Trustee has seized control of the Debtor's website, and has also posted notices alleging that Versata no longer has the right to license or use the Global IP.

15. As a result of the Italian Trustee's interference with Versata's customers under the Debtor's name, Versata has filed a complaint against the Debtor for breach of the License Agreement, tortious interference, and declaratory relief in the United States District Court for the

Western District of Texas, Austin Division, in the case styled and numbered *Versata FZ-LLC v. Think3, Inc.*, Civil Action No. 1:11-cv-404.

16. The Debtor has granted approximately fifty (50) other exclusive licenses of its intellectual property to customers in the United States under agreements similar to the License Agreement. The Debtor is concerned that the Italian Trustee will seek to terminate those licenses as well, leading to further customer confusion and mounting claims against the Debtor. The Italian Trustee's actions have already disrupted the Debtor's out-of-court restructuring efforts, and the Debtor believes that continued customer confusion will significantly hinder its chapter 11 reorganization efforts.

17. As a result of the Debtor's inability to access and further develop its assets due to the Italian Trustee, its lack of liquidity, and the threat of a Versata lawsuit, and in order to preserve its customer relationships and restructure its operations to allow it to develop the China IP, the Debtor was forced to file a voluntary chapter 11 bankruptcy petition.

FURTHER AFFIANT SAYETH NAUGHT.

Signed this 18 day of May, 2011.

_____
Andrew Price

SUBSCRIBED and SWORN to before me, the undersigned authority, on this 18th day of May, 2011.

_____
Notary Public in and for the State of Texas

BRANDI L. LENZO
Notary Public, State of Texas
My Commission Expires
November 04, 2014