# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | (CHAPTER 11) |
| | § | |
| THINK3 INC. | § | CASE NUMBER 11-11252 |
| | § | |
| DEBTOR. | § | |

## AFFIDAVIT AND STATEMENT OF REBECCA A. ROOF
## IN SUPPORT OF FIRST DAY PLEADINGS

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, personally appeared Rebecca A. Roof, who, upon being duly sworn, deposed and stated as follows:

My name is Rebecca A. Roof. I am over the age of eighteen and am fully competent to testify. As the Chief Restructuring Officer of think3 Inc. (the "Debtor"), debtor and debtor-in-possession in this chapter 11 case, I have personal knowledge of the facts set forth herein.

### I.  Factual Background

1. In making this Affidavit, I have reviewed and relied on the *Affidavit and Statement of Andrew Price* filed contemporaneously herewith.

### II.  Necessity for Emergency Hearings on "First Day" Motions

2. Contemporaneously herewith, the Debtor has filed the following "first day" motions (the "First Day Motions"):

   a. Emergency Application of the Debtor Pursuant to 11 U.S.C. § 363, Nunc Pro Tunc to the Petition Date, to Employ and Retain AP Services, LLC and Designate Rebecca A. Roof as Chief Restructuring Officer to the Debtor;

   b. Debtor's Emergency Motion for Order (1) Authorizing Continued Use of Existing Business Forms and Records; and (2) Authorizing

> Maintenance of Existing Corporate Bank Accounts and Cash Management System;

c. Debtor's Emergency Motion for Interim and Final Orders (I) Authorizing Secured Postpetition Financing, (II) Granting Security Interests and According Superpriority Administrative Claim Status, and (III) Scheduling Final Hearing; and

d. Debtor's Emergency Motion to Extend Deadline to File Bankruptcy Schedules and Statement of Financial Affairs.

### III. Service of First Day Motions

3. All motions presented to the Court for consideration as First Day Motions were served by facsimile or e-mail, where indicated, and via Federal Express for expedited delivery or USPS Express Mail if Federal Express was unavailable, on all parties identified on the proposed Master Service List attached hereto as **Exhibit A** on May 18, 2011. The hearing request for all motions presented to the Court for consideration as First Day Motions was served by facsimile or e-mail, where indicated, and by Federal Express for expedited delivery or USPS Express Mail if Federal Express was unavailable and electronically if the e-mail address was available, on all parties identified on the proposed Master Service List attached hereto as **Exhibit A** on May 18, 2011.

### IV. Procedural Motions

4. The Debtor seeks the entry of an order, pursuant to Bankruptcy Rule 1007(a)(5), granting it a thirty (30) day extension of the deadline (the "Filing Deadline") by which it must file its schedules (the "Schedules") and statement of financial affairs (the "Statement") so that the Schedules and Statement are due forty-four (44) days after the Petition Date.

5. Prior to May 18, 2011 (the "Petition Date"), the Debtor was unable to assemble all of the information necessary to complete and file its Schedules and Statement required by Bankruptcy Rule 1007(b) because of (a) the Debtor's lack of access to its books and records in

Italy; (b) the Debtor's limited financial and accounting information in the United States; and (c) the exigent nature of the Debtor's bankruptcy filing.

6. Given the critical matters that the Debtor's limited staff must address in the early days of these cases, the Debtor will not be in a position to complete the Schedules and Statement by the Filing Deadline. The Debtor submits that its inability to access the majority of its books and records, coupled with the volume of material that must be compiled and reviewed by the Debtor during the early days of these Chapter 11 cases, provides ample "cause" for a thirty (30) day extension of the Filing Deadline.

## V. Employment of Professionals

7. The Debtor seeks to employ and retain Rebecca A. Roof ("Roof") as Chief Restructuring Officer and AP Services, LLC ("APS") as crisis managers for the Debtor, effective as of the Petition Date.

8. The Debtor seeks to retain APS as its crisis managers and Roof as Chief Restructuring Officer because, among other things, APS has a wealth of experience in providing restructuring advisory services, and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. Additionally, APS has acquired knowledge of the Debtor and its business and is uniquely familiar with the Debtor's financial affairs, debt structure, operations and related matters. Likewise, in providing pre-petition services to the Debtor in connection with this matter, APS' professionals have worked closely with the Debtor's former management and other professionals. Accordingly, APS has developed significant relevant experience and expertise regarding the Debtor that will assist it in providing effective and efficient services in this case. Should the Court approve the Debtor's retention of APS as crisis managers and Roof as Chief

Restructuring Officer, APS will continue, without interruption, to perform the services for the Debtor as described herein.

9. In addition to APS' understanding of the Debtor's financial history and business operations, APS and its professionals have extensive experience working with financially troubled companies in complex financial restructurings both out-of-court and during chapter 11 cases. APS also has professionals located in Milan, Italy, which make it uniquely positioned to assist the Debtor with its restructuring matters in Italy.

10. If APS' application is approved, the professional services that APS will render to the Debtor as reasonably requested are expected to include:

    a. Understand the financial status of the Debtor and actions taken to date by the Italian Trustee; make recommendations for responsive actions.

    b. Understand the nature of related party transactions and intercompany debts.

    c. Develop a communications plan for existing stakeholders in order to preserve value for the Debtor.

    d. Assist the Debtor in the development and implementation of a reorganization plan.

    e. Assist in managing the "working group" professionals who are assisting the Debtor in the reorganization process or who are working for the Debtor's various stakeholders to improve coordination of their effort and individual work product to be consistent with the Debtor's overall restructuring goals.

    f. Assist in obtaining and presenting information required by parties in interest in the Debtor's bankruptcy process including official committees appointed by the United States Bankruptcy Court (the "Court") and the Court itself.

    g. Assist in preparing for and filing a Bankruptcy Petition, coordinating and providing administrative support for the proceeding and developing the Debtor's Plan of Reorganization or other appropriate case resolution, if necessary, and coordinating such with any counsel designated by the Debtor.

    h. Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Court as well as providing assistance in such areas as testimony before the Court on matters that are within APS' areas of expertise.

    i. Manage the claims and claims reconciliation processes.

    j. Assist with developing the complete notice database system to inform all potential creditors as to the filing of the case and the bar date notice.

    k. Process and mail all notices including the initial bankruptcy notices and bar date notice.

    l. Provide all voting ballots to necessary parties, quantify the ballot results and provide a final report to the Court.

    m. Prepare creditors matrix listing all potential creditors.

    n. Assist as requested in managing any litigation that may be brought against the Debtor in the Court.

    o. Assist with such other matters as may be requested that fall within APS' expertise and that are mutually agreeable.

### VI. Motions Related to Debtor's Business Operations

**A. Bank Accounts**

11. I understand that the Office of the United States Trustee has established certain operating guidelines for debtors-in-possession in order to supervise the administration of chapter 11 cases. These guidelines require chapter 11 debtors to, among other things, close all existing bank accounts and open new debtor-in-possession ("DIP") bank accounts, establish one DIP account for all estate monies required for the payment of taxes, maintain a separate DIP account for cash collateral, and obtain checks for all DIP accounts that bear the designation, "debtor-in-possession," the bankruptcy case number, and the type of account. These requirements are designed to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent the inadvertent postpetition payment of prepetition claims. The Debtor seeks a waiver of certain of these requirements.

12. The Debtor currently has control over its books and records located in the United States, but many of its books and records are currently under the control of the trustee for the

Debtor's Italian bankruptcy proceeding (the "Italian Trustee). The Debtor seeks a waiver of the requirement that it open a new set of books and records as of the Petition Date for its books and records located in the United States. To the extent the Debtor successfully recovers its books and records from the Italian Trustee, the Debtor also seeks a waiver of the requirement that it open a new set of Italian books and records as of the Petition Date. The Debtor respectfully submits that opening a new set of books and records would create unnecessary administrative burdens and hardship and would cause unnecessary expense, utilization of resources, and delay. With the use of computer technology, it is now easy to differentiate between pre- and postpetition transactions by date. The Debtor, in the ordinary course of its business, uses checks, invoices, stationery, and other business forms. By virtue of the nature and business in which the Debtor is engaged and the many other parties with whom the Debtor deals, the Debtor needs to use its existing business forms without alteration or change. Accordingly, the Debtor respectfully requests that it be authorized to continue to use its existing business forms and to maintain its existing business records.

13. The Debtor also respectfully requests authority to maintain its existing bank accounts (each a "Bank Account" or "Account" and collectively, the "Bank Accounts" or "Accounts") and cash management system (the "Cash Management System") in accordance with its usual and customary practices to ensure a smooth transition into Chapter 11 with minimal disruption to operations.

14. The Debtor requests authority to close any of the Bank Accounts if, in the exercise of its business judgment, the Debtor determines that such action is in the best interest of its estate.

15. Only if the Bank Accounts are continued with the same account numbers can the transition into Chapter 11 be smooth and orderly, with minimal interference with continuing operations. In order to conduct its postpetition business, the Debtor needs to be able to issue checks to vendors, service providers, and others. To open new accounts and obtain checks for those accounts will cause delay and disruption to the Debtor's business. Moreover, a change in the Accounts to which customers wire and route payments could delay the Debtor's receipt of funds needed for operations. By preserving business continuity and avoiding operational and administrative paralysis that closing the existing Bank Accounts and opening new ones would necessarily create, all parties-in-interest, including employees, vendors, and customers, will be best served, benefitting the Debtor's estate. The confusion that would otherwise result could only work to the detriment of this Chapter 11 case. Of course, no checks issued prior to the Petition Date are to be honored, except as otherwise provided by separate order of this Court.

16. The Debtor employs a Cash Management System in the ordinary course of its business. The Bank Accounts are described in more detail below.

17. The Debtor maintains three bank accounts at Italian banks (the "Italian Accounts"). The Italian Trustee currently has custody and control of the Italian Accounts. The Debtor intends to request that the Italian Trustee turn over custody and control of the Italian Accounts. The Debtor does not seek authority to maintain or use the Italian Accounts at this time.

18. The Debtor maintains two Accounts at Silicon Valley Bank: a merchant account and a checking account. Silicon Valley Bank is an authorized depository in Region 7. The Silicon Valley Bank Accounts appear to have been swept by the Italian Trustee shortly before the Petition Date and have a balance of $0.

19. Upon discovering that the funds in the Silicon Valley Bank Accounts had been swept, the Debtor opened a new commercial checking account at Comerica Bank. Comerica Bank is an authorized depository in Region 7. The Debtor requests authority to close its Bank Accounts at Silicon Valley Bank. The Debtor also requests authority to maintain the Bank Account located at Comerica Bank and agrees to notify Comerica Bank to convert the existing account to a debtor-in-possession account. The Debtor will monitor all Accounts to ensure that balances will not exceed the FDIC insured limit.

20. The Debtor will continue to maintain records respecting all transfers between and among the Bank Accounts so that all transactions can be ascertained after they have occurred. In addition, the Debtor will instruct its banks to add the designation, "Debtor-in-Possession" or "DIP" to their current and any future domestic Accounts with each such bank, will treat the Accounts for all purposes as Accounts of the Debtor as a DIP, and will maintain records that recognize the distinction between prepetition and postpetition transfers.

21. Additionally, certain of the banks charge the Debtor monthly fees for maintaining the Bank Accounts. The amount of the monthly fees varies based on actual usage. The Debtor was current on payment of the monthly fees through April, 2011. The Debtor requests authority to continue paying any monthly fees in the ordinary course of business, including any portion of the fees attributable to prepetition services.

**B.    DIP Financing**

22. The Debtor seeks authority to obtain postpetition financing (the "<u>DIP Credit Facility</u>") from Gensym Cayman, L.P. (the "<u>DIP Lender</u>") in an amount not to exceed $1,050,000 (of which $150,000 shall be initially available on an interim basis), subject to the terms and conditions of the Debtor-In-Possession Credit Agreement (the "<u>DIP Credit</u>

Agreement") between the Debtor (as borrower) and the DIP Lender (as lender) and the related loan and security agreements (collectively with the DIP Credit Agreement, the "DIP Credit Documents"). The Debtor also seeks authority to grant the DIP Lender security interests in the Debtor's property and assets pursuant to 11 U.S.C. § 364(c)(2) and (3) and superpriority administrative claims pursuant to 11 U.S.C. § 364(c)(1).

23. As part of the Debtor's analysis in considering filing for chapter 11 protection, the Debtor determined that it would require approximately $1 million of aggregate postpetition financing to get through the first 90 days of the bankruptcy, which is the anticipated amount of time that the Debtor would need to begin developing certain of its intellectual property. Given the Debtor's financial condition and capital structure, the Debtor believed that it could not obtain unsecured postpetition financing allowable solely as an administrative expense under Section 503(b)(1) of the Bankruptcy Code or solely in exchange for the grant of a "superpriority" administrative claim status under Section 364(c)(1). In addition, the Debtor believed that it could not obtain postpetition financing secured by a first priority lien on the Debtor's unencumbered assets (if any) or a subordinated lien on the encumbered assets. As discussed above, the Italian Trustee has been exercising control over certain of the Debtor's assets, including the Debtor's website. The uncertainty created by the Italian Trustee's actions has made it impossible for the Debtor to obtain financing from other sources. Therefore, the DIP Lender was the logical and only choice available to the Debtor for obtaining postpetition financing during its chapter 11 case.

24. Negotiations with the DIP Lender resulted in the DIP Credit Documents, which have been filed with the bankruptcy court. The Debtor negotiated for the DIP Credit Facility in the maximum principal amount of up to approximately $1 million, subject to certain adjustments

described in the DIP Credit Agreement. Negotiations between the Debtor and the DIP Lender regarding the DIP Credit Facility were at arms-length and were conducted in good faith.

25. As required under the DIP Credit Agreement, the Debtor has created a budget (the "DIP Budget") that shows anticipated revenues and expenditures during the 8-week period beginning on May 20, 2011. I was responsible for developing the DIP Budget to determine the Debtor's borrowing needs during the budget period. The DIP Budget provides a week-by-week summary of the Debtor's projected cash receipts and disbursements to indicate a running cash balance for any week in question. The cash flow model was built up from day-by-day detail concerning estimates of cash receipts and disbursements. I believe the estimates in the DIP Budget for cash receipts and disbursements are reasonable.

26. As reflected in the DIP Budget, the Debtor forecasts that its cash balances would drop steadily through the 8-week period provided in the DIP Budget. Without the requested interim financing, the Debtor will not be able to meet the working capital requirements of its business during the critical initial stages of its Chapter 11 case or to pay other bankruptcy-related expenses. As such, the Debtor has an immediate need for the requested interim financing in order to avoid immediate and irreparable harm to its business and its bankruptcy estate.

27. I believe that the financing contemplated by the DIP Credit Facility is essential to the Debtor's reorganization efforts and benefits the Debtor's bankruptcy estate and its creditors. It is critical to the preservation and enhancement of the Debtor's business and going concern value. With the credit provided under the DIP Credit Facility, the Debtor will be able to develop and generate revenue from its Chinese intellectual property, maintain adequate cash balances, and operate its business in order to preserve the ongoing value of its assets and enterprise for the benefit of all creditors.

FURTHER AFFIANT SAYETH NAUGHT.

Signed this 18th day of May, 2011.

_____
Rebecca A. Roof

SUBSCRIBED and SWORN to before me, the undersigned authority, on this 18th day of May, 2011.



_____
Notary Public in and for the State of Texas

**EXHIBIT A**

# DEBTOR'S MASTER SERVICE LIST
## (as of May 18, 2011)

**Debtor**

think3, Inc.
Attn: Rebecca A. Roof
6011 W. Courtyard Dr.
Austin, TX 78730
Email: broof@alixpartners.com
Facsimile: 212-490-1344

**Debtor's Counsel**

Haynes and Boone, LLP
Attn: Charles A. Beckham, Jr.
Attn: Brooks Hamilton
1 Houston Center
1221 McKinney, Suite 2100
Houston, TX 77010
Email: charles.beckham@haynesboone.com
Email: brooks.hamilton@haynesboone.com
Facsimile: 713-547-2600

**Debtor's Crisis Managers**

Think3, Inc.
c/o AlixPartners
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201

**U.S. Trustee**

Office of the United States Trustee
903 San Jacinto, Suite 230
Austin, TX 78701

**DIP Lender**

Gensym Cayman L.P.
c/o Morrison & Foerster LLP
Attn: Larry Engel
Attn: Vincent Novak
425 Market Street
San Francisco, CA 94105
Email: lengel@mofo.com
Email: vnovak@mofo.com

**Italian Trustee**

Mr. Andrea Ferri
Studio Ferri & Associati
Via D'Azeglio 19
40123 Bologna
Italy
Email: studio@studioferri.it
Facsimile: 051/270313

**Equity Interest Holder**

ESW Capital LLC
6011 W. Courtyard Dr.
Austin, TX 78730

**Governmental and Taxing Authorities**

Internal Revenue Service
STOP #5022AUS
300 E. 8th St.
Austin, TX 78701

Texas Comptroller of Public Accounts
Revenue Accounting Division - Bankruptcy Section
P.O. Box 13528
Austin, TX 78711

Texas Workforce Commission
Bankruptcy Section
P.O. Box 149080
Austin, TX 78714

Department of the Treasury
Internal Revenue Service
Cincinnati, OH 45999-0039

Illinois Department of Employment Security
Northern Region
260 East Indian Trail Rd.
Aurora, IL 60505-1733

Illinois Department of Employment Security
5608 West 75th Place
Burbank, IL 60459-3200

Ohio Attorney General
POBox 89471
Cleveland, OH 44101-6471

State of Illinois
Department of Employment Security
33 South Street
Chicago, IL 60603-2802

Illinois Department of Revenue
POBox 19447
Springfield, IL 62794-9447

Social Security Administration
Data Operations Center
Wilkes-Barre, PA 18769-0001

Equitalia
Patrizio Fiacco, Agente della Riscossione - Bologna
Equitalia Polis SpA
Via D. Svampa, 11
40129 Bologna
Italy

Michigan Dept. of Treasury
Lansing, MI 48930

**Insurance Companies**

Arch Capital Group Ltd.
Attn: Brendan Quinlan, ARM
Wessex House, 4th Floor
45 Reid Street
Hamilton, HM 12
Bermuda

The Chubb Corporation
15 Mountain View Road
PO Box 1615
Warren, NJ 07059

The Navigators Group, Inc.
One Penn Plaza
New York, NY 10119

**Banks**

Comerica Bank
Comerica Bank Tower
1717 Main Street
Dallas, TX 75201

Silicon Valley Bank
3003 Tasman Drive
Santa Clara, CA 95054

**Twenty Largest Unsecured Creditors**

Equitalia Polis SpA
Via D. Svampa, 11
40129 Bologna
Italy

Think3, SRL
Via Ronzani 7/29
4003 Casalecchio di Reno
Bologna, Italy

Think3 Designs Private Limited
3rd Floor, AKEMPS
28, 3rd Main, 1st Cross
Ashwini Layout
Ejipura
Bangalore 560 047
India

Think3, GmbH
Keltenring 5
Oberhaching
Munich
Germany

Bologna Group SpA
Piazza San Domenico 9
40124 Bologna, Italy

Think3, KK
Daimon KS Bldg. 6F
1-2-1 Shiba-Daimon
Minato-ku Tokyo, 105-0012
Japan

Think3, SARL
96 Boulevard Vivier Merle
Lyon, France

Think3, SARL
55 Avenue Galline
69100 Villeurbanne
France

La Torre SRL
Via Gabriele Colombo, 28
20050 Camparada (MB)
Italy

Siemens Ltd.
Wittelsbacherplatz 2
8033 Munich
Germany

Axus Italiana SRL
Via Cesare Giulio Viola 74
Roma, I-00148
Italy

KOSME s.r.l.
Via dell'Artigianato, 5
46048 Roverbella (Mantova)
Italy

Vision Consultants Limited
(address unknown)

Dell SA
Attn: General Counsel/Bankruptcy
One Dell Way
Round Rock, TX 78682

Versata Enterprises, Inc.
6011 W. Courtyard Drive
Austin, TX 78730

ITI -International Technegroup, Inc.
5303 DuPont Circle
Milford, OH 45150

Exergia Energia & Gas S.P.A.
C.so Sempione, 15a
21013 Gallarate
Italy

Cidielle Service SRL
19, v. Grada Grada
40122 Bologna (BO)
Italy

Studio Legale TommasoTommesani
Via De Poeti, n. 5
40124 Bologna
Italy

Vodafone Omnitel N.V.
Via Caboto, 15
20094 Corsico, Milano
Italy

Versata FZ LLC
707-708 Al Thurayal
Dubai Media City
Dubai
UAE

Versata FZ LLC
Attn: Andrew E. Monarch
Morrison & Foerster, LLP
425 Market Street
San Francisco, CA 94105

Versata FZ LLC
Attn: Patton G. Lochridge and Travis C. Barton
McGinnis Lochridge & Kilgore, LLP
600 Congress Ave, Suite 2100
Austin, TX 78701