

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: May 26, 2011.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**
_____

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | (CHAPTER 11) |
| | § | |
| THINK3 INC. | § | CASE NUMBER 11-11252 |
| | § | |
| DEBTOR. | § | |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105(a), 361, 363, 364(c), AND 364(e) AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) APPROVING USE OF CASH COLLATERAL, (II) AUTHORIZING DEBTOR TO INCUR POST-PETITION SECURED INDEBTEDNESS, (III) GRANTING SECURITY INTERESTS, AND (IV) SCHEDULING FINAL HEARING**

Think3 Inc. (the "Debtor"), as debtor-in-possession in this chapter 11 case, having moved

on May 18, 2011 (the "Motion")[1] for an order authorizing it to use certain Collateral, including

cash collateral (the "Cash Collateral"), to incur post-petition secured indebtedness, to grant

security interests and superpriority claims pursuant to sections 105(a) and 364(c)(1), (2), and (3)

of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of

---

[1] Unless otherwise defined in this Interim Order, capitalized terms used herein shall have the meanings ascribed to them in the Motion and in that certain Debtor-in-Possession Loan and Security Agreement by and among the Debtor, as borrower (the "Borrower"), on the one hand, and the Lender, on the other hand, dated as of May 18, 2011 (the "DIP Credit Agreement"), as applicable.

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and having requested, among other things, that:

(a)     the Court authorize the Debtor to use the Cash Collateral on the terms set forth herein;

(b)     the Court authorize the Debtor, pursuant to sections 105(a) and 364(c)(1), (2)  and (3) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014 and Local Bankruptcy Rule 4001, to obtain from Gensym Cayman, L.P. ("Lender"), a cash advance of up to $150,000 on an interim basis, pending a final hearing (the "Interim DIP Loan"), pursuant to the DIP Credit Agreement to: (i) fund ongoing working capital and general corporate needs of the Debtor during the Chapter 11 Case, (ii) pay the fees, costs, expenses, and disbursements of professionals retained by the Debtor and/or any statutory committees appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (the "Committees") as approved by the Court, (iii) pay the costs and expenses of members of the Committees as approved by the Court, and other bankruptcy-related charges as allowed by the Court, including the United States Trustee and Clerk Fees (as defined herein), (iv) pay to the Lender the fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) provided by the DIP Credit Agreement and the other agreements, instruments and documents executed in connection therewith (collectively, with the DIP Credit Agreement, the "DIP Credit Documents"), and (v) for such other purposes allowed under the DIP Credit Documents;

(c)     the Court order, first on an interim and then on a final basis, as set forth in the Motion, pursuant to sections 364(c)(1), (2) and (3) of the Bankruptcy Code, that the Obligations of the Debtor under the DIP Credit Documents (collectively, the "DIP Obligations") (i) be granted superpriority administrative expense status, having priority over any and all

administrative expenses of the kinds specified in, or arising or ordered under, sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 and 1114 of the Bankruptcy Code, except the Carve-Out (as defined in the DIP Credit Agreement) and (ii) be secured (a) under section 364(c)(2) of the Bankruptcy Code, by a first-priority, valid, binding, enforceable and perfected Lien on any and all Collateral (as defined in the DIP Credit Agreement) not subject to a validly perfected lien as of the Petition Date, and (b) under section 364(c)(3) of the Bankruptcy Code, by a junior, valid, binding, enforceable and perfected Lien on all other Collateral, except as otherwise provided in the Interim DIP Order or the Final DIP Order, as applicable, and subject only to the Carve-Out;

(d)     the Court conduct a hearing (the "Interim Hearing") to consider approval, on an interim basis, of the post-petition financing pursuant to the DIP Credit Documents and authorizing the Debtor to obtain, on an interim basis, advances under the DIP Credit Agreement (the "DIP Advances") secured by the Collateral in an amount of up to $150,000 (the "Interim Borrowing");

(e)     the Court find, pursuant to Bankruptcy Rule 4001(c)(1), that notice of the Interim Hearing was given to (i) the Office of the United States Trustee for the Western District of Texas (the "U.S. Trustee"), (ii) the Debtor's 20 largest unsecured creditors, as identified in its chapter 11 petition, (iii) counsel to the Lender; (iv) any parties that have filed a notice of appearance pursuant to Bankruptcy Rule 2002; (v) all known secured creditors of the Debtor, and (vi) the other interested parties by virtue of the Borrower's having filed the Motion and the DIP Credit Documents on the Court's PACER System (collectively, the "Notice Parties"); and

(f)     the Court schedule, pursuant to Bankruptcy Rule 4001, a hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") authorizing the Debtor to

obtain, on a final basis, DIP Advances under the DIP Credit Documents in an amount of up to $1,050,000 (the "Total Commitment");

And the Interim Hearing having been held on May 23, 2011; and based upon all of the pleadings filed with the Court, the evidence presented and the arguments of counsel made at the Interim Hearing; and the Court having noted the appearances of all parties-in-interest; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, granted, or overruled by the Court, and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate and creditors, and such relief is essential for the continued operations of the Debtor's business; and it further appearing that the Debtor has been unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code or other secured financing on equal or more favorable terms than those set forth in the DIP Credit Documents; and upon the record herein, and after due deliberation thereon, and sufficient cause appearing therefore,

**IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED, AND DECREED THAT:[2]**

1.      <u>Disposition</u>.  The Motion is granted on an interim basis on the terms set forth in this Interim Order.  This Interim Order shall be valid and binding on all parties-in-interest and fully effective immediately upon entry.

2.      <u>Jurisdiction; Venue</u>.  The Court has jurisdiction over the Chapter 11 Case, the parties, and the Debtor's property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).  Venue of the Chapter 11 Case and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

3.     <u>Purpose and Necessity of Financing</u>.  The Debtor requires the interim financing described in the Motion in the amount of $150,000 to fund, among other things, the Debtor's immediate cash requirements for working capital and general corporate needs. The Debtor is unable to obtain adequate unsecured credit allowable under section 503 of the Bankruptcy Code as an administrative expense or other financing under section 364(c) of the Bankruptcy Code on equal or more favorable terms than those set forth in the DIP Credit Documents within the time frame required by its needs to avoid immediate and irreparable harm. A loan facility in the amount and in the manner provided by the DIP Credit Documents is not available to the Debtor, generally, without granting to the Lender, pursuant to sections 364(c)(1), (2), and (3) of the Bankruptcy Code, the following: (a) as security for all DIP Obligations, pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code, (i) a first-priority, valid, binding, enforceable and perfected Lien on any Collateral not subject to a validly perfected lien as of the Petition Date, and (ii) a junior, valid, binding, enforceable and perfected Lien on all other Collateral, except as otherwise provided in the Interim DIP Order or the Final DIP Order, as applicable, and subject only to the Carve-Out.  After considering all alternatives, the Debtor has concluded in the exercise of its prudent business judgment that the loan facility provided under the DIP Credit Documents represents the best working capital financing available to it.

4.     <u>Good Cause</u>.  The Debtor's ability to obtain sufficient working capital and liquidity under the DIP Credit Documents is vital to the Debtor's estate and its creditors, so that the Debtor can continue to operate its business in the ordinary course and effect an orderly reorganization pursuant to a plan under section 1129 of the Bankruptcy Code.  The Debtor's estate will be immediately and irreparably harmed if this Interim Order is not entered.  Good cause thus has been shown for the interim relief sought in the Motion.

5.     Good Faith.   Based upon the record before the Court, the DIP Credit Documents have been negotiated in good faith and at arm's-length between the Debtor and the Lender.   Any DIP Loans and other financial accommodations made to the Debtor by the Lender pursuant to this Interim Order and the DIP Credit Documents shall be deemed to have been extended by the Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the Lender shall be entitled to all protections afforded thereby.   The terms of the loan facility provided under the DIP Credit Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.   None of the DIP Credit Documents, any provision thereof, or any right arising under any provision thereof shall be voidable or avoidable under section 548 of the Bankruptcy Code, under any applicable State Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law or otherwise.

6.     Authorization to Use Cash Collateral.   During the term of this Interim Order and subject to the terms hereof, the Debtor is authorized to use Cash Collateral in which any party, including the Lender, may have an interest, in accordance with the terms, conditions, and limitations set forth in the budget annexed hereto as Exhibit A (the "Budget") and otherwise pursuant and subject to the terms and conditions of the DIP Credit Agreement and this Interim Order.   To the extent that any such party does not consent to the use of any item of the Collateral, the interests of such party are hereby deemed adequately protected.

7.     Interim Borrowing.   Subject to the terms and conditions of this Order and the DIP Credit Documents including, without limitation, the covenants and Budget as specified in the DIP Credit Documents, the Lender may make an interim loan and advances to the Debtor in

the amount of $150,000, and the Debtor may use Cash Collateral in accordance with the Budget and the DIP Credit Agreement. Notwithstanding anything in this Interim Order to the contrary, the Debtor shall incur indebtedness pursuant to the DIP Credit Documents (the "DIP Indebtedness") and use the proceeds of the DIP Indebtedness solely in accordance with the covenants, formulae, Budget and other terms and conditions set forth in the DIP Credit Documents and this Interim Order. During the term of this Interim Order, by no later than 5:00 p.m. (Pacific time) on the Wednesday (or, if not a Business Day, on the next Business Day thereafter) of every other week commencing on Week 2 (as defined in the DIP Credit Agreement), Borrower shall furnish to Lender, in form and substance satisfactory to Lender, a report that sets forth for the immediately preceding two-week period the actual cash disbursements in comparison to the Projected Information for such periods set forth in the Budget on a cumulative, weekly roll-forward basis, together with a certification from the chief restructuring officer of Borrower that no Material Budget Deviation (as defined in the DIP Credit Agreement) has occurred, except as permitted in this Agreement. The Lender shall not have any obligation with respect to the proceeds of the DIP Facility, the Collateral, or the use of Cash Collateral, nor shall any of them be obligated to ensure or monitor the Debtor's compliance with any such covenants, formulae, Budget or other terms and conditions or be obligated to pay (directly or indirectly from the Collateral) any expenses incurred or authorized to be incurred pursuant to the DIP Credit Documents. The Lender's consent to any Budget shall not be construed as a commitment to continue to provide the DIP Facility or permit the use of Cash Collateral after the occurrence of an Event of Default (as defined in the DIP Credit Documents) or beyond the Termination Date, regardless of whether the aggregate funds described in the Budget have been expended. The actual weekly cash disbursements during a two-week period

shall not have a negative deviation from the relevant Projected Information (as defined in the DIP Credit Agreement) for such period set forth in the Budget of more than fifteen percent (15%) in the aggregate.

8.      Lien Priority.

(a)      As security for the DIP Obligations, in accordance with the terms of the DIP Credit Documents and this Interim Order, effective immediately, the Lender is hereby granted, pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code, subject and subordinate in priority of payment only to any liens existing prior to the Petition Date and to the Carve-Out, first priority, perfected security interests and liens in and on all Collateral (all of the foregoing collectively, the "Post-Petition Liens").

(b)      No lien or security interest granted to the Lender under this Interim Order or the DIP Credit Documents, as approved by this Interim Order, shall (i) be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (ii) hereafter be subordinated to or made *pari passu* with any other lien or security interest created and/or perfected pursuant to section 364(c) of the Bankruptcy Code or otherwise.  The Post-Petition Liens arising hereunder shall be and hereby are fully perfected security interests, such that no additional steps need be taken by the Lender to perfect such interests.

(c)      The Post-Petition Liens granted to the Lender under this Interim Order shall continue in the Chapter 11 Case and in any superseding case for the Debtor under any chapter of the Bankruptcy Code, and such liens and security interests shall maintain their priority as provided in this Interim Order, until all the DIP Obligations have been paid in full and the Total Commitment is terminated.

9. <u>Fees</u>. All fees payable and costs and/or expenses reimbursable under the DIP Credit Documents by the Debtor to the Lender are hereby approved and shall be promptly paid by the Debtor in accordance with this Interim Order and the DIP Credit Documents, and the Debtor is hereby authorized to pay all such fees without the necessity of the Debtor or the Lender filing any further application with the Court for approval or payment of such fees or expenses. All fees and costs and/or expenses payable by the Debtor in connection with the recording, filing and insuring of financing statements and mortgages to confirm (pursuant to Paragraph 14 of this Interim Order) the perfection of the security interests granted or authorized by this Interim Order are hereby approved and shall be promptly paid in full by the Debtor without the necessity of the Debtor or the Lender filing any further application with the Court for approval or payment of such fees, costs and/or expenses. Pursuant to 11 U.S.C. § 1146(a), the pledging of any collateral, the delivery of any security interests or other instruments of transfer, or the furnishing of any promissory note(s) or other evidence of indebtedness, in furtherance of, or in connection with, the DIP Facility or the DIP Credit Documents, including (a) any mortgages, security agreements, collateral assignments, or other similar documents or agreements, or (b) evidence or documents of perfection (including transfers of assets to and by the Lender in connection with enforcement of the DIP Credit Documents) shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

10. <u>Authority to Execute and Deliver Necessary Documents</u>. The Debtor is hereby authorized and empowered to enter into and deliver the DIP Credit Agreement in the form annexed hereto and the other DIP Credit Documents including, but not limited to, UCC financing statements and mortgages or deeds of trust as necessary or appropriate and securing all of the Debtor's obligations under the DIP Credit Agreement, including repayment of all DIP

Obligations in a maximum principal amount up to the Total Commitment. The Debtor is hereby further authorized, empowered, and directed (a) to perform all of its obligations under the DIP Credit Documents and such other agreements as may be required by the DIP Credit Documents to give effect to the terms of the financing provided for in the DIP Credit Documents as approved by this Interim Order, (b) to perform all acts required under the DIP Credit Documents and this Interim Order including, without limitation, the payment of all principal, interest, charges, fees, and the reimbursement of present and future reasonable costs and expenses (including without limitation, reasonable attorneys' fees and legal expenses) paid or incurred by the Lender as provided for in this Interim Order, the DIP Credit Agreement, and the other DIP Credit Documents, all of which unpaid principal, interest, charges, fees, reasonable attorneys' fees and the reimbursement of present and future reasonable costs and expenses shall be included and constitute part of the principal amount of the DIP Obligations, and be secured by valid and perfected liens on and security interests in all of the Collateral as and to the extent provided for in this Interim Order, the DIP Credit Agreement, and the other DIP Credit Documents, subject and subordinate in priority of payment only to any liens existing prior to the Petition Date and the Carve-Out, and (c) to do and perform all other acts, to make, execute, and deliver all other instruments, agreements, and documents, which may be required or necessary for the Debtor to perform all of its obligations under this Interim Order and the DIP Credit Documents, without further order of the Court and pending the Final Hearing. The DIP Obligations shall constitute valid and binding obligations of the Debtor enforceable against it, and its successors and assigns, in accordance with the terms of the DIP Credit Documents and this Interim Order.

11.    Amendments.  The Debtor and Lender may enter into any amendments or modifications to the DIP Credit Documents without the need of further notice and hearing or order

of this Court, provided that (a) such modifications or amendments do not materially and adversely affect, in the reasonable view of the Debtor, the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with the Court.

            12.    <u>Carve-Out</u>.

            (a)    Notwithstanding the occurrence of the Termination Date or an Event of Default under the DIP Credit Agreement, the Post-Petition Liens shall be subject to the following fees and expenses in an amount not exceeding $200,000 that have accrued in the Budget, inclusive of the amount of such fees and expenses which have been incurred and have not been paid at the time the Lender notifies Borrower of the occurrence of an Event of Default and the commencement of the calculation of the Carve-Out, but only to the extent such fees and expenses are allowed by the Bankruptcy Court: (a) amounts payable pursuant to 28 U.S.C. § 1930(a); and (b) professional fees (other than success, completion or any other back-end fees) and expenses of attorneys retained by Borrower or the Creditors' Committee or other statutory committee appointed in the Chapter 11 Case pursuant to §§ 327 and 1103 of the Bankruptcy Code solely in connection with the Chapter 11 Case (except, in each case, to the extent that such fees and expenses were incurred in the prosecution of actions, claims, or causes of action against the Lender or any of its affiliates; provided that no Carve-Out shall be available for any other party representing or purporting to represent the estate of the Borrower, including any foreign representative, whether receiving or seeking recognition under Chapter 15 of the Bankruptcy Code, or any trustee appointed under Chapter 7 or 11 of the Bankruptcy Code or other custodian or entity).

            (b)    No liens or priority claims, other than United States Trustee/Clerk Fees, having a lien or administrative priority superior to or *pari passu* with those granted by this

Interim Order to the Lender, shall be granted while any portion of the DIP Obligations remains outstanding without the written consent of the Lender;

(c)     Nothing contained herein shall be construed: (i) to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any such Bankruptcy Court-approved procedure from the applicable provisions of bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications and, if applicable, any subsequent order of this Court requiring that such payments be disgorged, and/or (ii) as consent to the allowance of any fees and expenses referred to above, and shall not affect any right of the Lender to object to the reasonableness of such amounts;

(d)     Neither Cash Collateral nor proceeds of any of the DIP Advances shall be used to request (i) the use of Cash Collateral without the Lender's prior written consent, and (ii) authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) of the Bankruptcy Code, or otherwise, other than from the Lender, or use Cash Collateral pursuant to section 363(c) of the Bankruptcy Code without the prior written approval of the Lender unless such loans or financial accommodations shall be used to indefeasibly pay in full in cash all DIP Obligations;

(e)     Neither Cash Collateral nor proceeds of any of the DIP Advances shall be used for the payment or reimbursement of any fees or disbursements of the Debtor, any Committees, or any trustee appointed in this Chapter 11 Case incurred in connection with the assertion and prosecution of, or joinder in, any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter including, but not limited to, any so-called lender liability claims, the purpose of which is to seek any order, judgment,

determination, or similar relief: (i) commencing or prosecuting any action asserting claims pursuant to sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code or other cause of action (whether arising under state law, the Bankruptcy Code or other federal law) against the Lender with respect to the validity and extent of the DIP Obligations or the validity, extent and priority of liens and security interests securing the DIP Obligations; (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Lender's liens on and security interests in the Collateral; or (iii) preventing, hindering or delaying (whether, directly or indirectly) in any manner the Lender in respect of its liens and security interests in the Collateral.

13.     Limitation On Additional Surcharges.     No action, inaction, or acquiescence by the Lender in this case, including the Lender's funding of the Debtor's ongoing operations shall be deemed to be or shall be considered as evidence of any alleged consent by the Lender to a charge against the Collateral or Lender pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code.  Neither the Debtor nor its estate may assert a claim under section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the DIP Lender upon, the Collateral.  The Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

14.     Additional Perfection Measures.

(a)     The liens, security interests, and priorities granted to the Lender pursuant to this Interim Order and the DIP Credit Documents with respect to property of the Debtor's estate shall be perfected by operation of law immediately upon entry of this Interim Order by the Court;

(b)     Neither the Debtor nor the Lender shall be required to enter into or to obtain landlord waivers, mortgagee waivers, bailee waivers, or warehouseman waivers or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including trademark, copyright, tradename, or patent assignment filings with the United States Patent and Trademark Office, Copyright Office, or any similar agency with respect to intellectual property), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the security interest and Post-Petition Liens granted pursuant to this Interim Order;

(c)     If the Lender, in its sole discretion, chooses to obtain consents from any licensor or similarly situated party-in-interest, to file financing statements, notices of lien or similar instruments, to record financing statements, mortgages or deeds of trust, or to otherwise confirm perfection of such security interests and liens: (i) the Lender is authorized and empowered to file or record financing statements, mortgages, deeds of trust or similar instruments which secure the DIP Obligations up to the maximum principal amount of the Maximum Final Borrowing; (ii) all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and (iii) no defect in any such act shall affect or impair the validity, perfection, and enforceability of the liens granted hereunder;

(d)     In lieu of obtaining such consents or filing such financing statements, notices of lien or similar instruments, the Lender may, at its sole discretion, choose to file a true and complete copy of this Interim Order or memorandum of same in any place at which any such instruments would or could be filed, together with a description of the Collateral located within the geographic area covered by such place of filing, and such filing by the Lender shall have the

same effect as if such financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order;

(e)     The Lender may deliver a copy of this Interim Order to any third parties having possession or control of the Collateral.

15.     <u>Access to Information</u>.  Without limiting the rights of access and information afforded the Lender under the DIP Credit Agreement and other DIP Credit Documents, the Debtor shall permit representatives, agents and/or employees of the Lender to have reasonable access to their premises and their records during normal business hours (without unreasonable interference with the proper operation of the Debtor's business) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

16.     <u>Access to Collateral</u>.  Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the Lender contained in this Interim Order or the DIP Credit Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Credit Agreement, upon three (3) business days' written notice to the landlord of any leased premises upon which any Collateral is located (a "Landlord"), that an Event of Default by the Debtor of any of its obligations under the DIP Credit Documents or this Interim Order has occurred and is continuing, the Lender may, subject to any separate agreement by and between such Landlord and the Lender, enter upon any leased premises of the Debtor for the purpose of exercising any remedy with respect to the Collateral located thereon and shall be entitled to all of the Debtor's rights and privileges as lessee under such lease without interference from the Landlord thereunder; <u>provided,</u> <u>however,</u> that the Lender shall only pay base rent as defined in the lease with any such Landlord (or other agreement between Lender and the

Landlord) and additional rent obligations of the Debtor (limited to charges for utilities, unless otherwise agreed between the Landlord and Lender) that first arise after the Lender's written notice referenced above and that are payable during the period of such occupancy by the Lender, calculated on a per diem basis. Nothing herein shall require the Debtor to assume and assign to the Lender any lease under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the Lender in this paragraph.

17.     <u>Bank Accounts.</u> The Lender is hereby granted, pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code, first priority, perfected security interest and lien in and on the Debtor's bank accounts, subject and subordinate in priority of payment only to any liens existing prior to the Petition Date and the Carve-Out.

18.     <u>Automatic Stay Modified</u>. The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified to the extent necessary so as to permit the Lender:

(a)     upon the occurrence and during the continuance of an Event of Default under the DIP Credit Documents, and upon three (3) Business Days' prior written notice to Borrower, counsel for the Committee and the United States Trustee, Lender shall be permitted to exercise any remedy in the nature of a liquidation of, or foreclosure on, any interest of Borrower in the Collateral, without any application, motion or notice to, hearing before, or order from the Bankruptcy Court.

(b)     Solely for purposes of the preceding clause, the automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, shall only be deemed terminated as provided herein without the necessity of any further action by the Court in the event that the

Debtor[3] has not filed an objection with the Court within five (5) business days after receiving such notice (which notice must be filed with Court by the Lender) from the Lender pursuant to this Interim Order. The Debtor[4] shall have the burden of proof at any hearing on any request to re-impose or continue the automatic stay of section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief, and the only issue that may be raised at any such hearing shall be whether, in fact, an Event of Default or Default has occurred and is continuing;

(c) this Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition, or continuance of the automatic stay of section 362(a) of the Bankruptcy Code or other injunctive relief requested; and

(d) upon the occurrence and during the continuance of an Event of Default by the Debtor of any of its obligations under the DIP Credit Documents, the Lender, may, at the election of Lender confirmed by written notice from Lender to Borrower, (i) terminate its obligation to make advances under the DIP Credit Agreement; (ii) immediately charge interest at the Default Rate set forth in the DIP Credit Agreement; (iii) terminate the Debtor's right to use Cash Collateral and require the Debtor to segregate and preserve all Cash Collateral for the benefit of the DIP Lender; (iv) declare the principal of and accrued interest, fees, and other liabilities constituting the Debtor's obligations under the DIP Credit Documents to be immediately due and payable; and/or (v) take any other action or exercise any other right or remedy permitted to the DIP Lender under the DIP Credit Documents, this Interim Order, or by operation of law. The Debtor waives any right to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent any such

---

[3] Debtor in Paragraph 18(b) also includes any party in interest.
[4] Debtor in Paragraph 18(b) also includes any party in interest.

relief would in any way restrict or impair the rights and remedies of the DIP Lender set forth in this Interim Order and in the DIP Credit Documents, provided that the Debtor will retain the right to challenge the occurrence of an Event of Default. If the Debtor or any other person challenges the occurrence of an Event of Default, any such person may request an expedited hearing before this Court (subject to the Court's availability) and the DIP Lender shall be permitted immediately to take any action described in clauses (i), (ii), (iii), and (iv) as described above, but unless the Court orders otherwise, the DIP Lender shall not take the actions described in clause (v) above pending any such hearing.

19. <u>No Responsible Person/Fiduciary</u>. In making the decision to make DIP Advances, administering the DIP Advances, and extending other financial accommodations to the Debtor under the DIP Credit Agreement or to collect the indebtedness and obligations of the Debtor, the Lender (a) shall not owe any fiduciary duty to the Debtor, its creditors, shareholders or estate; and (b) shall not be considered to be exercising control over any operations of the Debtor or acting in any way as a responsible person, an owner or an operator under any applicable law, including without limitation, any environmental law (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 *U.S.C. §§ 9601, et seq.,* the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901, *et seq.,* as either may be amended from time to time, or any similar federal or state statute). Nothing in this Interim Order or any other documents related to this transaction shall be in any way construed or interpreted to impose or allow the imposition upon the Lender of any liability for any claims arising from the pre-petition or post-petition activities of the Debtor in the operation of its business or in connection with its restructuring efforts.

20.  <u>Waiver of Liability</u>.  Except as set forth in the DIP Credit Documents, the Debtor waives demand, protest, notice of protest, notice of default or dishonor, notice of payment and nonpayment, nonpayment at maturity, release, compromise, settlement, extension, or renewal of documents, instruments, chattel paper, and guaranties at any time held by the DIP Lender with respect to the loan facility provided under the DIP Credit Documents (the "DIP Facility") on which the Debtor may in any way be liable.  So long as the DIP Lender complies with its obligations, if any, under applicable law (including the Bankruptcy Code), and the Debtor remains in control of the Collateral, (i) the DIP Lender shall not, in any way or manner, be liable or responsible for (A) the safekeeping of the Collateral, (B) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (C) any diminution in the value thereof, or (D) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (ii) all risk of loss, damage or destruction of the Collateral shall be borne by the Debtor.  Without prejudice to the rights of any other party, the Debtor waives any and all claims and causes of action against the DIP Lender, and its respective agents, affiliates, subsidiaries, directors, officers, employees, representatives, attorneys, professionals and advisors, directly related to the DIP Facility, this Interim Order, or the negotiation of the terms thereof.

21.  <u>Insurance</u>.  Pursuant to this Interim Order, the DIP Lender shall be and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the Debtor which in any way relates to the Collateral.

22.  <u>Proofs of Claim</u>.  The DIP Lender is hereby relieved of the requirement to file proofs of claim in the Case with respect to any Obligations.

23.     Successors and Assigns.  The DIP Credit Documents and the provisions of this Interim Order shall be binding upon the Lender, the Debtor and their respective successors and assigns, and shall inure to the benefit of the Lender and the Debtor and their respective successors and assigns including, without limitation, any trustee, responsible officer, examiner with expanded powers, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code.

24.     No Third Party Beneficiary.  Except with respect to the Lender, its delegates, successors and assigns, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

25.     Binding Nature of Agreement.  Each of the DIP Credit Documents to which the Debtor is and will become a party shall constitute legal, valid, and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms.  The DIP Credit Documents have been or will be properly executed and delivered to the Lender by the Debtor. The rights, remedies, powers, privileges, liens, and priorities of the Lender provided for in this Interim Order and in any other DIP Credit Documents shall not be modified, altered, or impaired in any manner by any subsequent order (including a confirmation order) or by any plan of reorganization or liquidation in this case or in any subsequent case under the Bankruptcy Code, unless and until the DIP Obligations have first been paid in full in cash and completely satisfied and the Total Commitment is terminated in accordance with the DIP Credit Agreement.

26.     Subsequent Reversal or Modification.  This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, granting the Lender all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, that action will not affect (a) the validity of any

obligation, indebtedness, or liability incurred hereunder by the Debtor to the Lender prior to the date of receipt by the Lender of written notice of the effective date of such action, or (b) the validity and enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit Documents.  Notwithstanding any such reversal, stay, modification, or vacatur, any post-petition indebtedness, obligation, or liability incurred by the Debtor to the Lender prior to written notice to the Lender of the effective date of such action shall be governed in all respects by the original provisions of this Interim Order, and Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Credit Documents with respect to all such indebtedness, obligation, or liability.

27.     No Waivers.

(a)     This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Lender may have to bring or be heard on any matter brought before this Court.

(b)     The rights and obligations of the Debtor and the rights, claims, liens, security interests, and priorities of the Lender arising under this Interim Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests, and priorities granted by the Debtor under the DIP Credit Documents.

(c)     Without limiting the generality of the foregoing subparagraphs, the Lender may petition this Court for any such additional protection it may reasonably require with respect to the DIP Indebtedness or otherwise.

28.     Sale/Conversion/Dismissal.

(a)     No motion shall be filed by the Debtor, and no order providing for either the sale of the ownership of the stock of the Debtor or the sale of all or substantially all of the

assets of the Debtor under section 363 of the Bankruptcy Code shall be entered by the Court unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to indefeasibly pay all DIP Obligations, and such DIP Obligations shall be indefeasibly paid in full in cash and completely satisfied and the Total Commitment is terminated in accordance with the DIP Credit Agreement as part of such action, or the Lender expressly consents in writing to any such transaction or the entry of such an order by the Court or such transaction is expressly permitted in the DIP Credit Documents.

(b)     If an order is entered (i) dismissing the Chapter 11 Case under sections 305 or 1112 of the Bankruptcy Code or otherwise, (ii) converting the Chapter 11 Case under section 1112 of the Bankruptcy Code, (iii) appointing a chapter 11 trustee or an examiner with expanded powers, or (iv) recognizing any non-U.S. insolvency proceeding in respect of the Debtor as a foreign main proceeding under Section 1517 of the Bankruptcy Code or otherwise granting practical control of the Debtor to any Person, including any trustee or other individual purporting to act under non-U.S. law, other than the Borrower's officers and directors having authority to act on behalf of the Borrower as of the date hereof, such order shall provide that (x) the liens and security interests granted to the Lender hereunder and in the DIP Credit Documents, as the case may be, shall continue in full force and effect, shall remain binding on all parties-in-interest and shall maintain their priorities as provided in this Interim Order until all DIP Obligations shall have been indefeasibly paid in full in cash and the Total Commitment shall have been terminated in accordance with the DIP Credit Agreement, and (y) this Court shall retain jurisdiction to the fullest extent permitted by law, notwithstanding such dismissal, for purposes of enforcing the liens and security interests of the Lender, as the case may be.

29.     Survival.  The Post-Petition Liens, lien priority, administrative priorities and other rights and remedies with respect to the Debtor granted to the Lender pursuant to the DIP Credit Documents and the Interim Order (specifically including, but not limited to, the existence, perfection, and priority of the Liens and security interests provided herein and therein) shall not be modified, altered, or impaired in any manner by any other financing or extension of credit or incurrence of indebtedness by the Borrower (pursuant to Section 364 of the Bankruptcy Code or otherwise), by any dismissal or conversion of the Chapter 11 Case, or by the confirmation of a plan of reorganization in the Chapter 11 Case which does not (i) contain a provision for termination of the Total Commitment and payment in full in cash of all DIP Obligations of the Borrower hereunder and under the DIP Credit Documents on or before the effective date of such plan and (ii) provide for the continuation of the liens and security interests of the Lender and the priorities thereof until the earlier of (A) such plan effective date, and (B) the date the Obligations are paid in full in cash and the Total Commitment is terminated, or by any other act or omission whatsoever.

30.     Priority of Terms.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Credit Documents, on the one hand, and (b) the Motion and the terms and provisions of this Interim Order, on the other hand, the terms and provisions of the Interim Order shall govern.

31.     Adequate Notice.  The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court.  Under the circumstances, no other or further notice of the request for the relief granted at the Interim Hearing is required.  The Debtor shall promptly mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties.  Any objection to the relief sought at the Final

Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be actually received no later than five days prior to the Final Hearing by the following: (a) counsel to the Debtor, Charles A. Beckham, Jr., Haynes and Boone, LLP, 1221 McKinney Street, Suite 2100, Houston, TX 77010, and (b) counsel to the Lender, Larry Engel, Morrison & Foerster LLP, 425 Market Street, San Francisco, CA 94105.

32. <u>Entry of Order, Effect</u>. This Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket in this Chapter 11 Case.

33. <u>Notice of Default Notice</u>. Upon receipt of a Notice of Default from the Lender, the Debtor shall file such notice with the clerk, and serve such notice on the parties listed on the Master Service List in this case.

34. <u>Final Hearing.</u> **The Court shall conduct a Final Hearing on the Motion commencing on June 21, 2011, at 1:30 P.M. (Central Time). Any objections to the relief requested shall be filed and served pursuant to paragraph 31 above.**

### 

Submitted by:
Charles A. Beckham, Jr.
HAYNES AND BOONE, LLP
1221 McKinney, Suite 2100
Houston, Texas 77010
Tel: (713) 547-2000
Fax: (713) 236-5638