**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | (CHAPTER 11) |
| | § | |
| THINK3 INC. | § | CASE NUMBER 11-11252 |
| | § | |
| DEBTOR. | § | |

**DEBTOR'S MOTION TO (I) APPROVE COMPROMISE AND SETTLEMENT OF CLAIMS BY AND BETWEEN THINK3 INC., VERSATA FZ-LLC, VERSATA DEVELOPMENT GROUP, INC., AND VERSATA SOFTWARE, INC., (II) ASSUME TECHNOLOGY LICENSE AGREEMENT, AND (III) APPROVE SALE OF CERTAIN <u>INTELLECTUAL PROPERTY INTERESTS TO VERSATA FZ-LLC</u>**

**A HEARING ON THIS MATTER HAS BEEN REQUESTED.**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Think3 Inc., debtor and debtor-in-possession in the above-referenced Chapter 11 case (the "Debtor"), files this Debtor's Motion to (i) Approve Compromise and Settlement of Claims By and Between Think3 Inc., Versata FZ-LLC, Versata Development Group, Inc., and Versata Software, Inc., (ii) Assume Technology License Agreement, and (iii) Approve Sale of Certain Intellectual Property Interests to Versata FZ-LLC (the "Motion") and respectfully represents the following:

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On May 18, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (as amended, the "Bankruptcy Code").  The Debtor is a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

**A.      Background and Corporate Structure of the Debtor**

3.      The Debtor was incorporated under the laws of the state of Delaware on June 21, 2000.  On September 27, 2010, the Debtor was acquired by ESW Capital LLC of Austin, Texas (the "Parent").  All of the issued and outstanding common stock of the Debtor is owned by the Parent.

4.      Throughout its history, the Debtor, together with its subsidiaries, has been a global leader in the computer-aided design ("CAD") and product lifecycle management ("PLM") software market.  The Debtor assisted manufacturing companies with styling, engineering, and tooling solutions and customer support services designed to help companies optimize the entire product development process and to help industrial designers to create better, more innovative products.

5.      The Debtor's principal place of business is Austin, Texas.  The Debtor also conducts business in Italy through a branch office (the "Italian Branch").  The Italian Branch is a

division of the Debtor and is not a separate legal entity. The Debtor has a worldwide presence through six wholly-owned subsidiaries: think3 GmbH (based in Germany) (the "German Subsidiary"), think3 SARL (based in France) (the "French Subsidiary"), think3 K.K. (based in Japan) (the "Japanese Subsidiary"), think3 Designs Private Limited (based in India) (the "Indian Subsidiary"), think3 China WOFE (based in China) (the "Chinese Subsidiary"), and think3 SRL (based in Italy) (the "Italian Subsidiary"). The Italian Subsidiary was a distributorship that performed sales and marketing functions for the Debtor. An insolvency proceeding has been commenced against the Italian Subsidiary in Italy, as described in more detail below. The Chinese Subsidiary is in the process of dissolving. The Indian Subsidiary has ceased operations. The French and German Subsidiaries have sought insolvency protection in France and Germany, respectively. The Japanese Subsidiary of the Debtor is operating at this time.

**B.      Events Leading up to Chapter 11 Filing**

6.      The Debtor has been in severe financial distress for some time. The worldwide economic downturn caused a decline in the industries of the Debtor's target customers, and the Debtor has been operating at a loss for several years. In late 2010, the Debtor embarked on an out-of-court restructuring plan aimed at generating enough cash to stabilize its operations, begin paying off liabilities, and create funding for the further development of its intellectual property in China (the "China IP"). The plan hinged on the sale of the Debtor's intellectual property other than the China IP (the "Global IP").

7.      On October 7, 2010, the Debtor entered into that certain Technology License Agreement (the "License Agreement") with Versata FZ-LLC ("Versata").[1] Under the License

---

[1] Versata is registered and domiciled in Dubai, and is a subsidiary of G-Dev Enterprises LLC, a Delaware entity. G-Dev Enterprises LLC's sole member is Joe Liemandt, who is also the sole member of the Parent.

Agreement, the Debtor granted Versata the exclusive right to use the Global IP in the design, development, manufacture, marketing, distribution, and support of products. In exchange, Versata paid the Debtor $3,000,000. The Debtor engaged an independent third party, accountant Doctor Antonio Bragaglia of Studio Bragaglia, to advise the Debtor regarding the sale of the Global IP. Dr. Bragaglia determined that the criteria for valuation of the Global IP reflected in the License Agreement were appropriate from a technical and professional point of view, and in line with general accepted financial practice in Italy and worldwide. The transaction with Versata provided a much-needed infusion of cash into the Debtor that allowed the Debtor to pay some of its creditors. The License Agreement is governed by Texas law.

8.     Also on October 7, 2010, Versata and the Italian Subsidiary entered into that certain Sales Representative Agreement (the "Sales Representative Agreement"). Pursuant to the Sales Representative Agreement, Versata appointed the Italian Subsidiary as its non-exclusive sales representative in Italy to market the products that Versata would create using the Global IP. In consideration for the services it provides under the Sales Representative Agreement, the Italian Subsidiary is entitled to a commission of fifty percent (50%) of order amounts from new customers.

9.     Following its acquisition of the Global IP under the License Agreement, Versata updated the Global IP by releasing upgraded versions of the think3 software numbered 2011.3 and 2011.4 (the "Upgraded Software").

10.     As the next stage in its restructuring effort, the Debtor took steps to reduce costs and operate more efficiently and to raise additional working capital. This process was disrupted when, on March 14, 2011, several creditors commenced an insolvency proceeding against the

Debtor and its Italian Subsidiary in the Court of Bologna, Italy (the "Italian Bankruptcy Court"). The Italian insolvency proceeding is case number 69/2011 (the "Italian Proceeding"). Despite the fact that the Debtor conducted its operations in Italy solely through the Italian Branch, the Italian Bankruptcy Court placed the Debtor into bankruptcy. The Italian Bankruptcy Court appointed Doctor Andrea Ferri as trustee (the "Italian Trustee") for the Debtor.

11.     The Italian Trustee has seized control of the Debtor's assets and property.[2] Among other things, the Italian Trustee has taken control of the Debtor's bank accounts in both the United States and Italy. He also has custody and control of the Debtor's books and records located in Italy, and he will not provide the Debtor access to the information therein. Upon information and belief, the Italian Trustee has also instructed the employees of the Debtor and the Italian Subsidiary not to communicate with the Debtor.

12.     Following his appointment, the Italian Trustee sought authority to terminate the License Agreement. On May 2, 2011, the Italian Bankruptcy Court authorized the termination. The Italian Trustee asserts that as a consequence of the purported termination of the License Agreement, Versata no longer has the right to use the Global IP.

13.     On May 10, 2011, Versata filed an appeal of the Italian Trustee's purported termination of the License Agreement. Versata asserted that under the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.*, the transfer of the Global IP to Versata under the License Agreement was essentially a transfer of ownership that cannot be terminated. Moreover, even if the transaction under the License Agreement is deemed to create a license, Versata asserted that it is entitled to retain its rights to use the Global IP regardless of the Italian Trustee's purported termination, as

---

[2] The Italian Bankruptcy Court appointed Massimiliano Magagnoli as the trustee for the Italian Subsidiary. Mr. Magagnoli has control of the Italian Subsidiary's assets and property.

provided in Section 365(n) of the Bankruptcy Code. On June 30, 2011, the Italian court in which Versata's appeal was pending entered a decree in favor of the Italian Trustee. Versata has informed the Debtor that it intends to appeal the decision.

14.     The Italian Trustee has also recently filed a suit seeking an injunction (the "Injunction Suit") against Versata in the Civil Court of Bologna, Italy (the "Italian Civil Court") to prevent Versata from using the Global IP and the think3 brand and from publishing any information online claiming to have the rights to the Global IP. Versata has informed the Debtor that it intends to challenge the Injunction Suit in the Italian Civil Court. The Italian Civil Court has scheduled a hearing to consider the injunction request for July 12, 2011.

15.     The Italian Trustee's actions have created considerable confusion among customers of think3 products and interfered with the Debtor's business. Upon information and belief, the Italian Trustee has directly contacted Versata's customers and directed them to make payments to the Italian Trustee rather than Versata. The Italian Trustee also posted notices on the Debtor's website alleging that Versata no longer has the right to license or use the Global IP.

16.     As a result of the Italian Trustee's interference with Versata's customers, Versata filed a complaint against the Debtor for breach of the License Agreement, tortious interference, and declaratory relief in the United States District Court for the Western District of Texas, Austin Division, in the case styled and numbered *Versata FZ-LLC v. Think3, Inc.*, Civil Action No. 1:11-cv-404 (the "Versata Lawsuit").

17.     Prior to the Petition Date, the Debtor granted approximately fifty (50) other exclusive licenses of its intellectual property to customers in the United States under agreements similar to the License Agreement. The Debtor is concerned that the Italian Trustee will seek to

terminate those licenses as well, leading to further customer confusion and mounting claims against the Debtor. The Italian Trustee's actions have already disrupted the Debtor's restructuring efforts, and the Debtor believes that continued customer confusion will significantly hinder its Chapter 11 reorganization efforts.

18.     As a result of the Debtor's inability to access and further develop its assets due to the Italian Trustee, its lack of liquidity, potential liability under the Versata Lawsuit, and to preserve its customer relationships and restructure its operations to allow it to develop the China IP, the Debtor filed a voluntary Chapter 11 bankruptcy petition. The Debtor appointed Rebecca A. Roof as its President, Secretary, and Chief Restructuring Officer (the "CRO"). The Court approved her appointment on May 24, 2011. The Debtor has obtained interim approval to borrow up to $305,000 (the "DIP Obligations") under the Debtor-in-Possession Loan and Security Agreement dated May 18, 2011 (the "DIP Credit Agreement") between the Debtor and Gensym Cayman, L.P. (the "DIP Lender").

**C.     The Chapter 11 Case**

19.     After her appointment as CRO, Ms. Roof began preparing Schedules of Assets and Liabilities and the Statement of Financial Affairs (the "Schedules and Statement") in the ordinary course of her duties as CRO. Ms. Roof also secured control of the Debtor's website, think3.com, which is property of the Debtor's Chapter 11 estate.

20.     Following her appointment, Ms. Roof requested that the Italian Trustee turn over all of the Debtor's property in his custody and control pursuant to Section 543 of the Bankruptcy Code, including the Debtor's books and records located in Italy. Additionally, Ms. Roof requested financial information to assist with her preparation of the Schedules and Statement.

The Italian Trustee ignored her requests. Thereafter, Ms. Roof offered to meet with the Italian Trustee in Bologna, Italy to attempt to gain access to the Debtor's books and records in the Italian Trustee's control and to discuss cooperation between the Debtor and the Italian Trustee. The Italian Trustee agreed to meet with Ms. Roof. On June 14, 2011, Ms. Roof and her Italian AP Services, LLC colleagues met with the Italian Trustee in Bologna, Italy. At the meeting, the Italian Trustee for the first time told Ms. Roof that he would have to obtain permission from the Italian Bankruptcy Court to give her access to the books and records, and he agreed to request this permission.

21.     Upon information and belief, the Italian Trustee has requested authority from the Italian Bankruptcy Court to grant Ms. Roof access to the books and records in the Italian Trustee's custody and control. To date, the Italian Bankruptcy Court has not granted the Italian Trustee's request, and the Italian Trustee has not provided the Debtor with access to its books and records under his control, despite the fact that Ms. Roof has offered to have her Italian colleagues work with the Italian Trustee to gather the necessary information. The Debtor's Italian counsel contacted the Italian Trustee's Italian counsel regarding the request to access the books and records located in Italy. The Italian Trustee's Italian counsel indicated to the Debtor's Italian counsel that the Italian Trustee was reluctant to give the Debtor access to its books and records located in Italy because the information may assist the Debtor in recovering its assets located in Italy.

22.     On numerous occasions since the June 14, 2011 meeting, Ms. Roof has offered to meet with the Italian Trustee in Italy to conduct global settlement discussions and facilitate cooperation. Ms. Roof has even prevailed upon Versata to participate in the settlement

discussions. The Italian Trustee has refused to meet with her until after the Italian Civil Court rules in the Injunction Suit.

23. Through his pursuit of termination of the License Agreement, his efforts to enjoin Versata from using think3 products, and his refusal to meet with Ms. Roof and Versata until he gains some litigation advantage in the Injunction Suit, the Italian Trustee is pursuing a full litigation strategy. Throughout her efforts to meet with the Italian Trustee and with Versata, Ms. Roof has pursued a strategy of cooperation and reconciliation.

24. Moreover, notwithstanding the request to grant Ms. Roof access to the books and records in Italy, the Italian Trustee has expressed reluctance to provide any information to Ms. Roof unless she will adopt the Italian Trustee's litigation strategy. Ms. Roof is reluctant to embrace the Italian Trustee's litigation strategy at this time because based on the information in her possession and control, the strategy is likely flawed. Further, the Italian Trustee has failed to provide any information in his possession to Ms. Roof in support of his litigation strategy. More importantly, this ongoing litigation continues to diminish the value of the China IP, and upon information and belief, think3 customers are abandoning think3 products. Absent a prompt settlement, the Debtor believes think3 products will continue to exist, but customers may no longer be willing to purchase them, instead favoring competitors' products, which are not subject to litigation and ownership risk. The think3 gelato is melting, and there is a need for a prompt and immediate settlement.

25.     The Italian Trustee's recent actions further give Ms. Roof doubts about the ability to cooperate with the Italian Trustee:

- On July 8, 2011, the Italian Trustee sent a message to customers of think3 products informing them that Ms. Roof had assumed of control of the think3 website.   An English translation of his message states, "This is a totally illegitimate act that was promptly reported to the Italian judiciary."

- Additionally, on July 8, 2011, U.S. counsel for the Italian Trustee informed the Debtor's counsel that the Italian Trustee has reported Ms. Roof to an Italian prosecutor in Bologna, Italy.  According to the Italian Trustee's U.S. counsel, the Italian prosecutor has threatened Ms. Roof with the risk of possible criminal prosecution for her actions as CRO of the Debtor if she returns to Italy.

26.     In light of the public hostility of the Italian Trustee, the refusal of the Italian Trustee to discuss a cooperative resolution of all disputes, and Ms. Roof's doubts about the tactics of the Italian Trustee in the delivery of threatened risk of criminal prosecution of Ms. Roof by the Italian prosecutor, the Debtor proceeded with settlement negotiations and reached a proposed settlement with Versata.  The proposed settlement will benefit the Chapter 11 estate and also remove the Debtor from the center of the controversy between Versata and the Italian Trustee.

27.     Subject to the Court's approval of this Motion, the Debtor, Versata, Versata Development Group, Inc. ("VDG"), and Versata Software, Inc. ("VSI") intend to enter into an agreement to settle all claims by and between the parties (the "Settlement Agreement") substantially in the form attached to this Motion as **Exhibit A**.  The Settlement Agreement settles

the rights and ownership interests of Versata in a manner that (i) returns to the Debtor a license to use and market certain valuable PLM software; (ii) enables the Debtor to exploit its China market opportunities using Versata's IP, service capabilities, and research and development; (iii) will empower the Debtor to propose a plan of reorganization; and (iv) enables the Debtor and Versata to collaborate to serve customers of think3 Products.

## PROPOSED COMPROMISE

28.     The Settlement Agreement provides several benefits to the Debtor's Chapter 11 Estate,[3] including:

- granting the Debtor's Chapter 11 Estate the right to use of all of Versata's improvements to the CAD Products, which will allow the Chapter 11 Estate to receive all of the benefit of Versata's continued research and development of its CAD Products not currently available to the Debtor without the risk of patent infringement liability and without any cost to the Chapter 11 Estate;

- granting the Debtor's Chapter 11 Estate the right to use and sell certain TD PLM Products;

- allowing the Chapter 11 Estate to generate revenue through the sale of CAD Products, which can be used to satisfy the claims of creditors;

- allowing the Chapter 11 Estate to use VDG and VSI's TD PLM Products and a license to conduct research and development of CAD Products anywhere in the world without the risk of patent infringement liability; and

---

[3] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

- providing financial benefits in the form of a settlement payment and an option for the Chapter 11 Estate to deem its DIP Obligations satisfied in full.

29. In exchange, the Debtor will agree to assume the License Agreement and transfer all of those rights it previously transferred to Versata under the License Agreement free and clear of all liens, claims, and encumbrances pursuant to Section 363(f). This agreement allows Versata to finally settle its rights to the Global IP. The Settlement Agreement also allows Versata to continue to pursue its claims against the Italian Trustee and the Italian Estate, while removing the Chapter 11 Estate from the controversy. This process will save the Chapter 11 Estate considerable costs, and it will enable the Chapter 11 Estate to begin developing its IP for use in China, which will preserve the think3 customer base and generate revenue to satisfy creditors.

30. The principal terms of the Settlement Agreement[4] provide that VDG and VSI will:

(i) grant the Chapter 11 Estate a nonexclusive license to manufacture, use, or sell TD PLM Products;

(ii) grant the Chapter 11 Estate a nonexclusive license to perform research and development activities anywhere in the world for the sole purpose of developing CAD Products for use in China; and

(iii) refrain from filing a complaint or similar pleading to institute a claim against the Chapter 11 Estate alleging infringement of any claim of any Related Party Patent based on the Debtor's use of a product prior to the Effective Date of the Settlement Agreement.

---

[4] A copy of the Settlement Agreement is attached hereto as **Exhibit A**. The description of the Settlement Agreement outlined in the following paragraphs is intended to be a summary only of the material terms and conditions of the Settlement Agreement. Parties should read the Settlement Agreement and related documents carefully in order to get a full understanding of the terms and conditions of the Settlement Agreement. If there is any inconsistency between the Settlement Agreement and this Motion, the terms of the Settlement Agreement shall govern.

31.    In addition, Versata will:

    (i)    amend the License Agreement to:

        (a)    grant the Chapter 11 Estate a nonexclusive license to manufacture, use, or sell the Licensee CAD Improvements in connection with the Debtor's CAD Products in China,

        (b)    grant the Chapter 11 Estate a nonexclusive license to manufacture, use, or sell TD PLM Products, and

        (c)    grant the Chapter 11 Estate an option to deem the DIP Obligations and an additional advance of $75,000 satisfied, which option can be exercised if the Chapter 11 Estate grants back the Licensee Cross-License to Versata and grants Versata and the Allied U.S. IP Parties a general release;

    (ii)    provide customers of think3 Products with software support on a mutually agreed basis consistent with what Versata is doing for its own comparable customers;

    (iii)    cause the DIP Lender to amend the DIP Credit Agreement to increase the existing DIP loan commitment to $1,125,000 in order to cover a mutually agreed budget for certain additional funding of expenses necessary for effectuating the Settlement Agreement;

    (iv)    pay the Chapter 11 Estate $250,000 (the "Settlement Amount");

    (v)    not enforce any judgment that may be entered in Versata's favor in the Versata Lawsuit against the Chapter 11 Estate or otherwise take any collection actions against the Chapter 11 Estate;

    (vi)    support a mutually agreeable joint marketing plan to calm and reassure customers of think3 Products and enable the Chapter 11 Estate to penetrate the China market and develop the Licensee Cross-License;

    (vii)    provide its best efforts to support the Chapter 11 Estate's attempts to recover its websites and to correct any incorrect information posted thereon by or for the Italian Trustee or his restarted version of the Debtor;

    (viii)    release the Chapter 11 Estate (but not any third parties, including the Italian Trustee and the Italian Estate) from

        (a)    any further obligation under any inter-company management services agreement with any of the Parent or the Debtor's U.S. affiliates, and

(b)     50% of any accrued sums owing thereunder as of the effective date of the Settlement Agreement, in consideration for the allowance in this case of the remaining half of such accrued liability as claims against the Chapter 11 Estate; and

(ix)    grant the CRO a general release from all claims Versata may have in connection with or relating to the Debtor's bankruptcy case.

32.     In exchange, the Debtor will:

(i)     assume the License Agreement pursuant to Section 365 of the Bankruptcy Code;

(ii)    sell to Versata, pursuant to Section 363(f) of the Bankruptcy Code, all of its right, title, and interest to those rights of the Debtor previously licensed to Versata (the "IP Rights") under the License Agreement, as amended by the Settlement Agreement;

(iii)   grant Versata an allowed general unsecured claim in the amount of $100,000 on account of the breaches of the original License Agreement described in the Versata Lawsuit, with the rest of the Versata claim being released against the Chapter 11 Estate (but not as to any third party, including the Italian Trustee and the Italian Estate); and

(iv)    release Versata and each of the Allied U.S. IP Parties from claims or causes of action in connection with the Merger, the License Agreement, or the actions of the released parties in connection therewith or relating thereto, including any potential liability for the transfer of the Global IP under fraudulent transfer or other applicable theories.

### RELIEF REQUESTED

33.     The Debtor seeks an order: (i) approving the Settlement Agreement, (ii) authorizing the Debtor to assume the License Agreement, and (iii) approving the proposed sale of the IP Rights to Versata.

### A.      Approval of the Settlement Agreement

34.     Bankruptcy Rule 9019(a) provides that, after notice and a hearing, a court may approve a compromise or settlement of a claim.  Fed. R. Bankr. P. 9019(a).  The decision to accept or reject a settlement lies within the sound discretion of the court.  *In re Carson*, 82 B.R.

847, 852 (Bankr. S.D. Ohio 1987) (citing *In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 365 (Bankr. D. R.I. 1986)).

35.     A bankruptcy court has power, under Bankruptcy Rule 9019(a), to approve settlements that are "'fair and equitable and in the best interest of the estate.'" *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997) (quoting *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995)).  A settlement may be approved only if it does not "fall below the lowest point in the range of reasonableness." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2nd Cir. 1983)).  Although the bankruptcy court must determine if the settlement is fair and equitable, this does not give the court jurisdiction over the conditions of the settlement that do not bear on the court's duties to preserve the estate and protect creditors. *In re Zale Corp.*, 62 F.3d 746, 754 (5th Cir. 1995).

36.     The proposed settlement with Versata is in the best interest of the creditors and the bankruptcy estate and should be approved.  The Settlement Agreement was negotiated at arm's length between the Debtor and Versata.  Absent the proposed settlement, this matter could not be resolved outside of lengthy litigation that would cause the bankruptcy estate to incur significant expense and dim the Debtor's prospects for reorganization.  The Debtor believes that a consideration of the factors set forth in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968), and cases decided thereunder, supports approval of the proposed settlement.  Settlements and compromises are a "normal part of the bankruptcy process." *Id.* at 424 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939).

37. The decision whether to approve a particular settlement lies within the discretion of the bankruptcy court. *American Can Co. v. Herpel, (In re Jackson Brewing Co.)*, 624 F.2d 605, 607 (5th Cir. 1980). "It must be remembered that the evaluation of any lawsuit is quite problematic and calls for a significant degree of speculation." *Texas Extrusion Corp. v. Lockheed Corp.*, (*In re Texas Extrusion Corp.*), 844 F.2d 1142, 1159 (5th Cir. 1988). A reviewing court will uphold the approval of a settlement if it is the result of "an adequate and intelligent consideration of the merits of the claims, the difficulties of pursuing them, the potential harm to the debtor's estate caused by delay, and the fairness of the terms of the settlement." *TMT Trailer Ferry, Inc.*, 390 U.S. at 434.

38. The Fifth Circuit has held that in deciding whether to approve a settlement, courts should evaluate and set forth in a comprehensive fashion:

    (a)    The probability of success in the litigation, with due consideration for the uncertainty in fact and law;

    (b)    The complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and

    (c)    All other facts bearing on the wisdom of the compromise.

*In re Jackson Brewing Co.*, 624 F.2d at 607-08.

39. The Debtor submits that the proposed compromise is in the best interest of the estate because it results in a fair and equitable compromise after consideration of the aforementioned factors.

**1.    Probability of Success on the Merits**

40. The Debtor believes that it may not succeed on the merits of the Versata Lawsuit, and any success the Debtor may have in the litigation will come at a substantial cost to the

Debtor's estate and creditors. Even in light of the Italian Trustee's purported termination of the License Agreement, the Debtor has doubts about the Italian Trustee's litigation strategy. The Italian Trustee has challenged the License Agreement on three alternative grounds: (i) failure of consideration, (ii) a fraudulent transfer theory for failure to pay reasonably equivalent value, and (iii) a rejection of an executory contract theory. The Debtor has doubts about the success of each theory in the United States absent additional information from the Italian Trustee, which he continues to refuse to provide:

Failure of Consideration

- Ms. Roof has reviewed records regarding Versata's payment of consideration to think3 for the License Agreement. Ms. Roof believes the $3,000,000 in consideration was paid by Versata.

Fraudulent Transfer

- Based upon all of the information in Ms. Roof's possession, Ms. Roof believes that Versata paid reasonably equivalent value for the License Agreement, and therefore, the License Agreement may not be avoided as a fraudulent transfer.

Rejection of Executory Contract

- Ms. Roof does not believe the License Agreement is an executory contract subject to rejection by the Debtor. In the event the License Agreement is an executory contract, even if the Debtor were to reject the License Agreement, Versata would continue to have the right to use the Global IP notwithstanding the rejection pursuant to Section 365(n).

### 2. Complexity and Likely Duration of the Litigation

41.     Even if the Debtor were to prevail in the Versata Lawsuit, its success would come at great expense to its estate and creditors.  Thus, resolution of the Versata Lawsuit is beneficial for the Debtor.  The Versata Lawsuit involves complex intellectual property issues that would require extensive preparation and a lengthy trial, which would cause the Debtor to incur substantial attorneys' fees and expenses.  If the Debtor does not prevail, it could result in a significant damages claim against its estate exceeding $3 million.

42.     The bigger cost to the Debtor, however, will be its loss of customers of think3 Products and damage to the think3 brand.  The Italian Trustee's actions have caused considerable confusion to customers of think3 Products, many of whom may stop using think3 Products.  In order to preserve the value of the Debtor's assets, to be successful in developing and marketing products under the Licensee Cross-License it will receive as a result of the proposed settlement, and to advance its China strategy, the Debtor needs customer confidence.  The proposed settlement allows the Debtor to receive necessary upgrades and service for its products, and Versata is the best party ready, willing, and able to assist the Debtor in this regard.  Versata will also provide the technological, marketing and financial support needed for confirming a plan of reorganization and advancing the Debtor's China strategy.  Lastly, the proposed settlement will also allow the Debtor to perform and avoid breaches of the Debtor's more than 50 U.S. customer licenses and many other offshore customer licenses.  In sum, the proposed settlement will allow the Debtor to resolve the confusion caused by the Italian Trustee and develop its China IP, while also saving its estate from incurring extensive legal fees and expenses in defending against the Versata Lawsuit.

### 3.    Other Factors

43.    The proposed settlement is the Debtor's best hope of reorganization.  Absent the proposed settlement with Versata, VDG, and VSI, not only will the Debtor have to defend itself in the Versata Lawsuit and against potential patent infringement claims by VDG and VSI, but the Debtor will lose the IP licenses and the financial, marketing and research and development support that Versata will provide under the Settlement Agreement.  These benefits likely cannot be obtained from any other source, so the Debtor will not be able to develop its China IP or generate the revenue necessary to pay creditors and confirm a plan of reorganization.  It is therefore the sound business judgment of the Debtor, after a thorough consideration of the aforementioned factors, that the proposed settlement is in the best interest of the estate.  The Debtor submits that the terms of the proposed settlement fall within the reasonable range of the litigation possibilities as set forth in *TMT Trailer Ferry, Inc., supra.*

### 4.    The Proposed Settlement Should be Approved under Section 363(b) of the Bankruptcy Code, as Required by the Fifth Circuit in *Cadle Co. v. Mims*

44.    In addition to the factors set forth in *TMT Trailer Ferry, Inc.*, the Fifth Circuit recently held that a compromise of estate claims may constitute a sale of property of the estate, such that the compromise would also need to satisfy the requirements of Section 363(b) of the Bankruptcy Code.  *See Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 262 (5th Cir. 2010).  Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Courts have uniformly held that approval of a proposed sale of property pursuant to Section 363(b) is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor.  *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l*

*Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *see also Cadle Co.*, 608 F.3d at 262 (noting that in considering a proposed sale under Section 363 of the Bankruptcy Code, "[c]ourts will look to the trustee's articulated business justification or sound business reasons for the proposed sale").

45.     In the Settlement Agreement, the Debtor seeks to compromise its potential claims against Versata, including any claim for recovery of the Global IP as a fraudulent transfer.  The Debtor has several sound business reasons for the proposed settlement.  The Settlement Agreement resolves the Versata Lawsuit in an efficient and cost-effective manner, provides the Debtor with the funding and support it will need to develop its China IP, reduces the significant claims Versata has alleged against the Debtor's estate, saves the estate considerable expenses in litigating a fraudulent transfer claim against Versata, and enables the Debtor to restore public confidence so that the Debtor can reorganize its business and continue operating as a going concern.  The Debtor receives all of these benefits in exchange for releasing Versata from, *inter alia*, potential fraudulent transfer liability, and the Debtor believes that Versata is providing fair and reasonable consideration in exchange for its release.  Therefore, the Debtor submits that entering into the Settlement Agreement is an exercise of the Debtor's reasonable business judgment and is in the best interest of the Debtor's estate and creditors.

**B.      Assumption of the License Agreement**

46.      The Debtor requests that the Court grant it authority to assume the License Agreement, to the extent that it is an executory contract within the meaning of Section 365 of the Bankruptcy Code, and that the Court find that the consideration provided in the Settlement Agreement is sufficient to cure any defaults under the License Agreement.  In the Debtor's business judgment, the assumption of the License Agreement is in the best interest of the Debtor's estate.

47.      Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Section 365(b)(1) of the Bankruptcy Code, in turn, provides that if there has been a default on an executory contract or unexpired lease, the debtor may not assume such contract or lease unless, at the time of assumption, the debtor (a) cures, or provides adequate assurance that it will promptly cure, such default, (b) compensates, or provides adequate assurance that it will promptly compensate, the non-debtor party to the agreement for any pecuniary loss resulting from such default, and (c) provides adequate assurance of future performance under the agreement.  11 U.S.C. § 365(b)(1).

48.      The standard governing bankruptcy court approval of a debtor's decision to assume or reject executory contracts or unexpired leases of nonresidential real property is whether the debtor's reasonable business judgment supports assumption or rejection.  *See Official Comm. of Unsecured Creditors of Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 524 n.5 (5th Cir. 2004); *Lifemark Hosps., Inc. v. Liljeberg Enters. (In re Liljeberg Enters.)*, 304 F.3d 410, 438 (5th Cir. 2002); *Richmond Leasing Co. v. Capital*

*Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985) ("It is well established that 'the question [of] whether a lease should be rejected . . . is one of business judgment") (quoting *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 318 U.S. 523, (1943)).

49.     The Debtor has determined that the assumption of the License Agreement represents a sound exercise of its business judgment. The assumption of the License Agreement, and the execution of the Settlement Agreement, will provide the Debtor with the support and resources it needs to develop the Licensee Cross-License and the China IP. Moreover, the Debtor and Versata have settled on a fixed claim for damages that Versata sustained as a result of the actions of the Italian Trustee, and this claim, together with the other actions contemplated by the Settlement Agreement, will provide Versata with the cure and adequate protection required by Sections 365(b) and (f) of the Bankruptcy Code. Therefore, the Debtor submits that the Court should authorize it to assume the License Agreement.

**C.     Approval of the Proposed Sale of the IP Rights to Versata**

50.     The Debtor requests that the Court approve the proposed sale of the IP Rights to Versata pursuant to Section 363(f) of the Bankruptcy Code. As noted above, a debtor may sell property of the estate outside the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b)(1). Approval of a proposed sale is warranted if a court finds that the transaction represents a reasonable business judgment on the part of the debtor. *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986) ("for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for

using, selling, or leasing the property outside the ordinary course of business.") (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

51.     The Debtor submits that the proposed sale of the IP Rights to Versata is within the Debtor's reasonable business judgment.  The proposed sale is a necessary element of the Settlement Agreement, and if the Court does not approve the proposed sale, the Settlement Agreement cannot be effectuated.  Without the Settlement Agreement, the Debtor will be forced to defend itself in lengthy and expensive litigation against Versata.  The Debtor will also lack the resources it needs to develop its China IP and will not have the right to develop the Licensee Cross-License, both of which are essential to the Debtor's ability to reorganize and continue operating as a going concern.

52.     The Debtor also believes that the proposed sale is fair and reasonable in light of the consideration that Versata will provide to the Debtor.  The proposed sale allows the Debtor and Versata to settle rights that were previously granted to Versata under the License Agreement and removes confusion among customers of think3 Products.  This proposed settlement will greatly benefit the Debtor's reorganization process, and it will not cost the Debtor's estate any additional consideration because the IP Rights had already been granted to Versata under the License Agreement prior to the Debtor's bankruptcy filing.

53.     The Debtor also requests authority to sell the IP Rights free and clear of liens, claims, interests, and encumbrances, pursuant to Section 363(f) of the Bankruptcy Code.  Section 363(f) provides:

> (f)  The trustee may sell property under subsection (b) or (c) of this Section free and clear of any interest in such property of an entity other than the estate, only if-

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

54.     Section 363(f) is written in the disjunctive.  *See In re Collins*, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995) ("Section 363(f) is phrased in the disjunctive, such that only one of the enumerated conditions must be met in order for the Court to approve the proposed sale."); *In re P.K.R. Convalescent Ctrs., Inc.*, 189 B.R. 90, 94 (Bankr. E.D. Va. 1995) ("[Section] 363 covers more situations than just sales involving liens . . . .  Section 363(f) addresses sales free and clear of any interest."); *In re Gen. Bearing Corp.*, 136 B.R. 361, 366 (Bankr. S.D.N.Y. 1992). Accordingly, to approve a sale free and clear of all liens, the Debtor is required only to meet one of the five conditions listed in Section 363(f).

55.     The only entities with interests in the IP Rights are the Debtor and Versata. Under the terms of the Settlement Agreement, the Debtor and Versata both consent to the proposed sale, which satisfies Section 363(f)(2).

56.     To the extent the Italian Trustee may claim he has an interest in the IP Rights, such interest is in bona fide dispute.  The term "bona fide dispute" is not defined in the Bankruptcy Code, but courts have interpreted it to mean "an objective basis for either a legal or

factual dispute as to the validity of the asserted interest." *See, e.g., In re Taylor,* 198 B.R. 142, 162 (Bankr. D.S.C. 1996). The IP Rights were granted to Versata under the License Agreement prior to the Italian Proceeding. As such, the IP Rights could not be considered property of any estate in the Italian Proceeding. Moreover, the Italian Trustee lacked authority to terminate the License Agreement, so the IP Rights never came into the Debtor's estate after commencement of the Italian Proceeding. Therefore, the Debtor submits that any interest that the Italian Trustee may have is subject to a bona fide dispute, in satisfaction of Section 363(f)(4).

57. Moreover, if the Italian Trustee succeeds in recovering the rights to the Global IP, the Global IP is the property of the Debtor's bankruptcy estate pursuant to Section 541 of the Bankruptcy Code. *See* 11 U.S.C. § 541(a) (providing that a debtor's estate consists of, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held"). All property of the Debtor's estate in the possession, custody, or control of the Italian Trustee must be turned over to the Debtor pursuant to Section 543 of the Bankruptcy Code. *See* 11 U.S.C. § 543(b) (requiring a custodian of property of the debtor to "deliver to the [debtor] any property of the debtor held by or transferred to such custodian . . . that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case"). Because the Global IP is property of the Debtor's Chapter 11 estate, the Debtor is free to transfer the Global IP to Versata pursuant to Section 363 of the Bankruptcy Code and upon approval from the Court.

## CONCLUSION

58.     The Debtor believes that the Settlement Agreement, and the proposed assumption of the License Agreement and sale of IP Rights to Versata contemplated thereunder, are in the best interest of the Debtor's estate and creditors.  The Settlement Agreement is the best means of resolving all claims among the Debtor, Versata, VDG, and VSI efficiently and in a cost effective manner, and it also enables the Debtor to obtain the support and resources it needs to develop the Licensee Cross-License and the China IP, which are essential to the Debtor's reorganization.

**WHEREFORE, PREMISES CONSIDERED,** the Debtor respectfully requests that the Court enter an order (i) granting the Motion, (ii) approving the Settlement Agreement in substantially the form attached as **Exhibit A**, (iii) authorizing the assumption of the License Agreement, (iv) approving the proposed sale of the IP Rights to Versata, and (v) granting such other and further relief to which the Debtor is justly entitled.

Dated:  July 11, 2011                    Respectfully submitted,

**HAYNES AND BOONE, LLP**

_____/s/ Charles A. Beckham, Jr._____
Charles A. Beckham, Jr.
Texas Bar No. 02016600
Brooks Hamilton
Texas Bar No. 24046015
Kelli M. Stephenson
Texas Bar No. 24070678
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas  77010
Telephone (713) 547-2000
Facsimile (713) 547-2600

**COUNSEL TO DEBTOR-IN-POSSESSION**