UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | (CHAPTER 11) |
| | § | |
| THINK3 INC. | § | CASE NUMBER 11-11252 |
| | § | |
| DEBTOR. | § | |

**AFFIDAVIT AND STATEMENT OF REBECCA A. ROOF
IN SUPPORT OF EXTENSION OF DEBTOR-IN-POSSESSION
FINANCING ON A FINAL BASIS**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, personally appeared Rebecca A. Roof, who, upon being duly sworn, deposed and stated as follows:

My name is Rebecca A. Roof. I am over the age of eighteen and am fully competent to testify. As the Chief Restructuring Officer of think3 Inc. (the "Debtor"), debtor and debtor-in-possession in this chapter 11 case, I have personal knowledge of the facts set forth herein.

### I. Factual Background

1. The Debtor, together with its subsidiaries, is a global leader in the computer-aided design and product lifecycle management software market. The Debtor's principal place of business is Austin, Texas. The Debtor also conducted business in Italy through a branch office. The Debtor has a worldwide presence through six subsidiaries, including think3 SRL (based in Italy) (the "Italian Subsidiary").

2. On March 14, 2011, several creditors commenced an insolvency proceeding against the Debtor and the Italian Subsidiary in the Court of Bologna, Italy (the "Italian Court"). The Italian insolvency proceeding is case number 69/2011. The Italian Court appointed Doctor Andrea Ferri as trustee (the "Italian Trustee") in the Italian insolvency proceeding.

1

3. On May 18, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (as amended, the "Bankruptcy Code") in this Court. The Debtor is a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. I am the Chief Restructuring Officer of the Debtor.

4. Prior to the Petition Date, the Italian Trustee took control of the Debtor's books and records located in Italy, and has refused to give the Debtor access. The Italian Trustee has also instructed the employees of the Debtor in Italy and the Italian Subsidiary not to communicate with the Debtor.

5. Prior to the Petition Date, the Debtor was unable to assemble all of the information necessary to complete and file its schedules of assets and liabilities (the "Schedules") and statement of financial affairs (the "Statement") required by Bankruptcy Rule 1007(b) due to (a) the Debtor's lack of access to its books and records in Italy; (b) the Debtor's limited financial and accounting information in the United States; and (c) the exigent nature of the Debtor's bankruptcy filing. Therefore, on the Petition Date, the Debtor filed its Emergency Motion to Extend Deadline to File Bankruptcy Schedules and Statement of Financial Affairs (the "First Extension Motion") (Docket No. 4). On May 24, 2011, the Court entered an order granting the First Extension Motion and extending the deadline for the Debtor to file its Schedules and Statement to July 1, 2011 (the "Filing Deadline") (Docket No. 31).

6. On May 19, 2011, I sent a letter to the Italian Trustee requesting that the Italian Trustee, as a custodian of property of the Debtor's estate under section 543 of the Bankruptcy Code, turn over any of the Debtor's property currently in his possession, custody, or control and file an accounting with the Court. The May 19, 2011 letter also requested that the Italian Trustee

2

turn over the Debtor's books and records to me. The Italian Trustee did not respond to the request.

7. On June 8, 2011, I sent a second letter to the Italian Trustee requesting that the Italian Trustee provide me with certain information about the Debtor necessary to complete the Schedules and Statement. The Italian Trustee did not respond to the June 8, 2011 letter.

8. On June 14, 2011, the Debtor's counsel and I met with the Italian Trustee and his Italian and U.S. counsel in Bologna, Italy. I again requested the necessary information to complete the Schedules and Statement. The Italian Trustee expressed a willingness to cooperate, but, for the first time, informed me that he is required to seek approval from the Italian Court before releasing any information to the Debtor. Immediately after the meeting, Debtor's counsel sent another letter to U.S. counsel for the Italian Trustee requesting certain information necessary to complete the Schedules and Statement, in order that the Italian Trustee may request approval from the Italian Court. On June 20, 2011, U.S. counsel for the Italian Trustee informed the Debtor that the Italian Trustee has requested permission from the Italian Court to provide the necessary information to the Debtor. The Italian Court has not ruled on the request for permission at this time.

9. I have engaged the Italian law firm of Bonelli Erede Pappalardo Studio Legale (the "Bonelli Firm"). I have instructed the Bonelli Firm to file a request on my behalf with the Italian Court for access to the books and records.

10. The Debtor anticipated that the process of obtaining approval from the Italian Court would not be completed before the July 1, 2011 Filing Deadline. The Debtor filed a Second Emergency Motion to Extend Deadline to File Bankruptcy Schedules and Statement of Financial Affairs (the "Second Extension Motion") (Docket No. 56) on June 20, 2011. On June

22, 2011, the Court entered an order granting the Second Extension Motion and extending the Filing Deadline to August 1, 2011 (Docket No. 62).

11. On July 12, 2011, the Debtor filed its Schedules and Statement based on the information currently available (Docket Nos. 83 and 84). The Debtor believes that its Schedules and Statement are substantially complete.

12. The Debtor recognizes the importance of filing complete Schedules and a complete Statement in this Chapter 11 case. The Debtor intends to file amended Schedules and an amended Statement as soon as the Debtor gains access to its books and records located in Italy. AP Services, LLC, the Debtor's crisis managers, has an Italian-based team available to begin reviewing the books and records held by the Italian Trustee in the event the Italian Court grants the Debtor access to the books and records. Given that the Schedules and Statement on file with the Court are substantially complete, the Debtor does not anticipate that filing amended Schedules and an amended Statement would take very much time once the Debtor gains access to the books and records in the Italian Trustee's possession.

## II. Request for Extension of Debtor-in-Possession Financing on a Final Basis

13. On May 18, 2011, the Debtor filed its Emergency Motion for Interim and Final Orders (i) Authorizing Secured Postpetition Financing, (ii) Granting Security Interests and According Superpriority Administrative Claim Status, (iii) Authorizing Use of Cash Collateral, and (iv) Scheduling Final Hearing (the "DIP Motion") (Docket No. 7). On May 26, 2011, the Court granted the DIP Motion on an interim basis (the "First Interim Order") (Docket No. 41) and authorized the Debtor to borrow up to $150,000 from Gensym Cayman, L.P.

14. The Debtor requested a second extension of its debtor-in-possession financing (the "DIP Financing") on an interim basis at the hearing on June 21, 2011. On June 22, 2011,

4

the Court entered an order (the "Second Interim Order") (Docket No. 64) allowing the Debtor to borrow up to $305,000 on an interim basis. The Court scheduled a final hearing on the DIP Motion on July 21, 2011 at 10:30 a.m. (Central Time).

15. In light of the Debtor's filing of its substantially complete Schedules and Statement, the Debtor requests that the Court grant the DIP Motion on a final basis. Without the requested DIP Financing, the Debtor will not be able to meet the working capital requirements of its business or pay other bankruptcy-related expenses. The Debtor is currently facing complex legal issues regarding its intellectual property rights, and the DIP Financing is essential to ensure that the Debtor has the resources to resolve those issues and formulate a plan of reorganization. Without the requested DIP Financing, the Debtor will be unable to resolve its legal issues and will likely liquidate, to the detriment of its creditors.

16. I believe that the financing contemplated by the DIP Financing is essential to the Debtor's reorganization efforts and benefits the Debtor's bankruptcy estate and its creditors. It is critical to the preservation and enhancement of the Debtor's business and going concern value. With the credit provided under the DIP Financing, the Debtor will be able to fund operating expenses and ensure continuing negotiations with the Italian Trustee. The DIP Financing is essential to preserve the ongoing value of its assets and enterprise for the benefit of all creditors. Approving the DIP Financing on a final basis would also provide adequate financial assurance for the Debtor's estate and professionals. The Debtor intends to operate pursuant to the terms of the budget attached hereto as Exhibit A.

### III. Notice

17. Parties in interest in the Debtor's bankruptcy case have received notice of the DIP Motion, and no party has filed an objection to the DIP Motion. On May 18, 2011, the Debtor

5

served the DIP Motion on the parties listed on its Master Service List by email, facsimile, and/or expedited mail and filed a certificate of service on May 20, 2011 (Docket No. 21). On May 26, 2011, the Debtor served the First Interim Order on the parties listed on its Master Service List by email, facsimile, and/or first class mail and filed a certificate of service on May 27, 2011 (Docket No. 47). The First Interim Order provided notice to parties in interest that the Final Hearing on the DIP Motion was scheduled for June 21, 2011.

18. At the June 21, 2011 hearing, at the Debtor's request, the Court continued the Final Hearing on the DIP Motion to July 21, 2011. Parties receiving notice via the Court's ECF system received notice of the continued Final Hearing by the Court's ECF system on June 21, 2011. In addition, the United States Trustee, counsel for the Lender, and counsel for the Italian Trustee were present at the June 21, 2011 hearing and received notice of the Final Hearing when it was announced on the record that the Final Hearing would be held on July 21, 2011.

19. During its preparation for the July 21, 2011 hearing, the Debtor discovered that the Second Interim Order had not been served on the parties on the Debtor's 20 largest unsecured creditors list (the "20 Largest List"). Upon realizing that the 20 Largest List had not been served, the Debtor served the Second Interim Order on July 19, 2011 by email and/or facsimile, where available, on the 20 Largest List. The Debtor filed a corresponding certificate of service on July 20, 2011 (Docket No. 90).

20. The Debtor believes that parties in interest in its bankruptcy case received proper notice of the DIP Motion and have had ample opportunity during the last two months to object to the relief requested therein. No parties in interest have opposed the DIP Motion.

FURTHER AFFIANT SAYETH NAUGHT.

Signed this 21st day of July, 2011.

_____
Rebecca A. Roof

SUBSCRIBED and SWORN to before me, the undersigned authority, on this 21st day of July, 2011.

_____
Notary Public in and for the State of Texas

JULIE ABERNATHY
MY COMMISSION EXPIRES
March 22, 2012

think3 Inc.
Debtor-in-Possession Operating Budget
As of July 20, 2011

Privileged & Confidential
Attorney Work Product

| | W/E | FORECAST Week 10 7/22 | FORECAST Week 11 7/29 | FORECAST Week 12 8/5 | FORECAST Week 13 8/12 | FORECAST Week 14 8/19 | FORECAST Week 15 8/26 | FORECAST Week 16 9/2 | FORECAST Week 17 9/9 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Receipts: | | | | | | | | | | |
| Proceeds from DIP Borrowings | | $ 205,000 | $ - | $ - | $ - | $ 135,000 | $ - | $ - | $ - | $ 340,000 |
| Other | | - | - | - | - | - | - | - | - | - |
| Total Receipts | | $ 205,000 | $ - | $ - | $ - | $ 135,000 | $ - | $ - | $ - | $ 340,000 |
| Disbursements: | | | | | | | | | | |
| Professional Fees | | $ 109,362 | $ - | $ - | $ - | $ 255,000 | $ - | $ - | $ - | 364,362 |
| Service Agreement Fees | | - | - | - | - | - | - | - | - | - |
| US Trustee Fees | | 325 | - | - | - | - | - | - | - | 325 |
| Bank Service Fees | | - | - | - | - | - | - | - | - | - |
| Interest | | - | 1,466 | - | - | - | - | 2,925 | - | 4,391 |
| China Plan Development | | - | - | 20,000 | - | 40,000 | - | - | - | 60,000 |
| Other | | - | - | - | - | - | - | - | - | - |
| Paydown of DIP Borrowings | | - | - | - | - | - | - | - | - | - |
| Total Disbursements | | $ 109,687 | $ 1,466 | $ 20,000 | $ - | $ 295,000 | $ - | $ 2,925 | $ - | $ 429,078 |
| Net | | 95,313 | (1,466) | (20,000) | - | (160,000) | - | (2,925) | - | (89,078) |
| Beginning Cash | | 99,904 | 195,216 | 193,750 | 173,750 | 173,750 | 13,750 | 13,750 | 10,825 | - |
| Ending Cash | | $ 195,216 | $ 193,750 | $ 173,750 | $ 173,750 | $ 13,750 | $ 13,750 | $ 10,825 | $ 10,825 | $ (89,078) |
| DIP Balance | | $ 305,000 | $ 305,000 | $ 305,000 | $ 305,000 | $ 440,000 | $ 440,000 | $ 440,000 | $ 440,000 | $ 440,000 |

EXHIBIT A